**In re SWEETWATER, a Utah corporation, et al., Debtors and Debtors in Possession.**

**PALM SPRINGS OWNERS ASSOCIATION, Appellant,**

v.

**SWEETWATER, A Utah corporation, Appellee.**

**No. C–84–546J.**

United States District Court, D. Utah, C.D.

Feb. 28, 1985.

Charles C. Brown, Salt Lake City, Utah, for appellant, Palm Springs Owners Ass'n.

Ralph R. Mabey and Steven J. McCardell, Salt Lake City, Utah (Robert Nelson, on brief), for Sweetwater, the reorganized debtor.

Richard F. Bojanowski, Salt Lake City, Utah, for appellant creditors, Allan Heins, Janet Heins and Hildegard Heins.

## MEMORANDUM OPINION

JENKINS, Chief Judge.

This appeal is from the June 8, 1984, Bankruptcy Court order confirming Sweetwater's Chapter 11 Plan of Reorganization, 40 B.R. 733. It raises two related issues: (1) Whether a homeowners' association that has no direct claim against the debtors' estate has standing on appeal to challenge a plan's treatment of the association's members; and (2) Whether a plan of reorganization should have classified such a homeowners' association to allow the association to vote in a representative capacity.

On November 2, 1984, this court heard oral arguments on the appeal. Charles C. Brown appeared for the appellant, Palm Springs Owners Association. Ralph R. Mabey and Steven J. McCardell (Robert Nelson with them on the brief) appeared for the appellee, Sweetwater. At the conclusion of the oral arguments, the court dismissed the appeal as being inappropriately perfected. On its own motion, the court has reconsidered its ruling dismissing the appeal. The court now enters this memorandum opinion.

The appellee debtors in these Chapter 11 cases, Sweetwater and seven related entities (referred to here collectively with RUTI-Sweetwater, the reorganized debtor, as "Sweetwater"), operate timeshare vacation condominiums. In late 1983 and early 1984, the eight debtors filed petitions for relief under Chapter 11. The cases were then consolidated for purposes of administration. At that time, Sweetwater faced secured and unsecured claims of millions of dollars, in addition to the obligations it owed to thousands of timeshare owners. The 120 page Plan of Reorganization included 83 separate classes of secured creditors and 40 classes of timeshare owners. Necessarily, the Plan of Reorganization was complicated.

The appellant Palm Springs Owners Association (Association) is a nonprofit California corporation originally incorporated by the debtors. The Association's members all purchased timeshare interests in Sweetwater's Palm Springs, California, resort. Resort Systems, one of the debtors, had entered into a contract with the Association to manage the condominium timeshares in Palm Springs. On January 25, 1984, the Association's Board of Directors voted to terminate the management contract with Resort Systems.

Sweetwater's original Plan of Reorganization classified all the purchasers of timeshare interests at all of Sweetwater's re-

sorts in a single class. The Plan dealt directly with the purchasers; it did not classify the Palm Springs Association or any of the other 27 similar associations. After the Association objected to this classification, Sweetwater amended the Plan to place the purchasers in each project in a separate class. The reclassification also disregarded the various associations.

The Plan as amended provided that each purchaser, upon payment of the balance of the purchase price, would receive title, free and clear of liens, to either the timeshare interval that the purchaser had purchased or an interval of equivalent value. The Plan also provided that the purchasers would form a "Master Homeowner's Association (MHA) to which all existing Home Owner's Associations (HOA's) shall belong." Letter from David A. Leta, Attorney for the Purchasers Committee to Robert Whitman, dated April 2, 1984, at p. 3 (This letter was incorporated into the Plan in as Exhibit L). The Plan strictly limited the ability of an HOA to terminate its relationship with the MHA.

The Plan further provided that the MHA and Sweetwater would execute a management contract and that the MHA would oversee Sweetwater's performance under that contract. The order confirming the Plan required the purchasers in each HOA to amend their respective associations' By-laws, Articles, and Covenants to effect the terms and conditions of the Plan. In the event that the purchasers failed to do so, the order provided that those By-laws, Articles, and Covenants were deemed to be amended. Finally, the Plan provided that the members of any HOA that was not a member of the Master Association would lose Sweetwater exchange privileges.

The members of the Appellant Palm Springs Owners Association voted overwhelmingly in favor of the plan. However, the Association, which was not classified and therefore did not vote, filed written objections to the Plan. After receiving testimony and listening to arguments on the Association's objections, the Bankruptcy Court confirmed the Plan. The Association appeals from that order and raises a myriad of issues.[1] Many of the issues it presents on appeal it failed to raise in the Bankruptcy Court. This court will not consider any issues that the Association failed to present to the Bankruptcy Court.[2] *See Citicorp Acceptance Co., Inc., v. RUTI-Sweetwater (In re Sweetwater),* 57 B.R. 354, 358–59 (D.Utah 1985). The only issues presented to this court on appeal are as follows:

---

**1.** It is unclear which issues the Association intended to press on appeal. Its Notice of Appeal lists 11 issues, many of which it failed to raise in the Bankruptcy Court. It did not file a designation of the record on appeal or a statement of issues to be presented. *See* Bankruptcy Rule 8006. Its brief does not contain a statement of issues presented. *See* Bankruptcy Rule 8010. However, its brief does discuss many of the issues the Association raised in its objections to confirmation of the plan.

**2.** The Association filed five objections to the Plan. Only two of those are relevant on appeal. They provide, in relevant part, as follows:

　　1. Pursuant to 11 U.S.C. § 1122, classification of the Association and its members' claims or interests do not comply therewith, in that ... the Association should be classified as a separate claim pursuant to its Declaration....
　　2. Pursuant to 11 U.S.C. § 1129(a)(3), the Plan as proposed violates antitrust, securities and corporate law in relation to the Associa-

tion's Declaration of Covenants, Conditions and Restrictions. The tying of the management to the exchange privileges is forbidden. Further, the Declaration provides that any management contract shall be in writing, and any other contract cannot exceed a one year term. Furthermore, the management contract therin envisions a delegation of the Board of Directors' authority which cannot be made to a corporation and which delegation, even if valid, must be subject to a discretionary act on behalf of the Board of Directors to terminate for cause. A Plan which does not provide for such limitations is illegal an (sic) in violation of the charter and corporate law. This situation is exacerbated with the requirement of belonging to a Master Owner Association. Furthermore, a consent to change the Bylaws and Declarations would have to be made by the shareholders pursuant to a required meeting and notice.
Sweetwater Palm Springs Condoshare Project I Owners Association's Objections To The Plan of Reorganization, filed May 25, 1984, at pp. 1–3.

(1) Whether the Plan contains an illegal tying arrangement in violation of the antitrust laws;

(2) Whether the Plan's provision that requires the purchasers to amend the Association's Declaration of Covenants, Conditions, and Restrictions conflicts with the Declaration in violation of state corporate law; and

(3) Whether the Plan should have classified the Association in a representative capacity.

Before reaching the merits of the Association's contentions, it is necessary to determine whether the Association has standing to appeal from the Bankruptcy Court's order confirming the Plan. Section 39(c) of the Bankruptcy Act of 1898 provided that only an "aggrieved person" had standing to appeal. 11 U.S.C. § 67(c) (1976) (repealed 1978). Although the Bankruptcy Act of 1978 did not include a provision similar to section 39(c), the courts and commentators have uniformly applied the "aggrieved person" test to appeals under the 1978 Code. *Fondiller v. Robertson (In re Fondiller),* 707 F.2d 441, 442–43 (9th Cir. 1983); *In re Goodwins Discount Furniture, Inc.,* 16 B.R. 885, 888 (1st Cir.1982); 1 Collier on Bankruptcy ¶ 3.03[6][b] (15th ed. 1984).

■■■■ To be an aggrieved person, an appellant must be "directly and adversely affected pecuniarily by an order of the bankruptcy court." *Fondiller* at 442. The order appealed from is the order confirming the Plan of Reorganization. The Plan itself is complex. It affects over 120 separate classes of creditors and purchasers. Although the Association satisfies the "aggrieved person" test and therefore has standing to appeal from the order, it does

not follow that the Association has standing to challenge parts of the Plan that do not affect the Association. This Court interprets the "aggrieved person" test to mean that an appellant who is appealing from a Bankruptcy Court order confirming a plan of reorganization may challenge only those parts of the plan that directly, adversely, and pecuniarily affect the appellant.

■■■■ The Association has two separate categories of interests: (1) interests it has as an entity, and (2) the collective individual interests of its members. The first are direct interests; the second, derivative. The Association has standing to challenge only the parts of the Plan that affect its direct interests—the interests it has as an entity, separate and distinct from the collective individual interests of its members.

The Association's interest in an alleged antitrust violation is derivative of the collective interests of its members. The Association argues that the provision in the Plan that denies the purchasers the right to use the Sweetwater exchange network unless the Association joins the Master Association is an unlawful tying arrangement. It asserts that exchange privileges are tied to a management contract. Even assuming that the Association is correct, the Association would not be directly affected by such a violation. The Association's members, not the Association itself as an entity, are the purchasers of the tied product. The Association has no direct interest in exchange privileges. Any effect of an antitrust violation on the Association, therefore, is derivative of the collective, individual rights of the purchasers.[3] Accordingly, the Association has no standing on appeal

---

3. *Mission Hills Condominium Association M–1 v. Corely,* 570 F.Supp. 453 (N.D.Ill.1983), cited by the Association in its brief, is inapposite. In *Mission Hills,* the court found that the Association had standing to sue for antitrust relief on behalf of its members. It was not a bankruptcy appeal. The concept of standing in the "case or controversy" sense is different from the concept of standing to appeal a bankruptcy court order. The first is a limitation imposed by Article III of

the Constitution; the second is a limitation imposed by bankruptcy policy.

Even if the two standards were identical, *Mission Hills* would be inapposite. In *Mission Hills* the court indicated that the Association had standing so long as the individual members were not required to participate in the action. In this case, the individual members actually participated. It was not necessary to have a representative action.

to challenge the Plan on the basis that the Plan violates the antitrust laws.

The Association's interest in the part of the Plan that requires the purchasers to amend the Association's Declaration is also an interest the Association derived from the collective interests of its members. The Plan provides that the purchasers, the members of the Association, will amend the Declaration to comply with the provisions of the Plan. The members of the Association voted to accept the Plan and, by so voting, obligated themselves to amend the Declaration as provided in the Plan. Although the Association is affected by a provision of the Plan that requires the purchasers to amend the Declaration, that effect is not sufficiently direct to give the Association standing to challenge that part of the Plan on appeal.

In addition, the order confirming the Plan provides that if the purchasers do not amend the Declaration, the Declaration is deemed to be amended by operation of the Plan. Again, this part of the order directly affects only the purchasers. The Declaration provides that the purchasers have the power to amend the Declaration. An order that, in effect, takes that power from the purchasers does not directly affect the Association as an entity. Accordingly, it has no standing to appeal from this part of the Bankruptcy Court's order.[4]

The Association does have standing to challenge the failure of the Plan to classify the Association as a representative of its members. There can be little doubt that a plan's failure to classify an appellant affects that appellant both directly and adversely. Because it is not clear whether the Plan also affects the Association pecuniarily without first looking at the substance of the Association's claim, this court assumes that there is a pecuniary effect for the limited purpose of determining whether the Association has standing to appeal.

The Association's claim that it should have been classified suffers from a familiar defect. The Association does not claim that it should have been classified as a creditor, as an administrative claimant, or even as the holder of an executory contract. It simply wanted to assert the collective interests of its members, the purchasers.

The Bankruptcy court made a finding of fact that the purchasers should speak for themselves. This court finds that there was ample support for that finding.[5] The purchasers were present and were represented in the bankruptcy proceedings by a purchasers' committee. As the actual purchasers of timeshare intervals, they had individual interests that the Association as an entity would not have been in the position to assert on their behalf. It was more equitable to allow them to decide individually the fate of their investment in a timeshare than to allow a representative to decide that fate for them. The actual proceedings underscore this conclusion: The individual purchasers voted to accept the Plan; their Association, had it been given the opportunity, would have voted to reject it.

Accordingly, the Bankruptcy Court did not err in confirming the Plan of Reorganization. Its order confirming the Plan is therefore AFFIRMED.

---

**4.** The Association may have standing to challenge on appeal the part of the Plan that requires the Master Association to enter a management contract with Sweetwater. The Association argues that its Declaration requires the Association to enter such contracts and that allowing the Master Association to enter a management contract would be contrary to the Association's Declaration. However, even if the Association has standing to assert this argu-

ment, the argument itself has no merit. The Plan amends the Declaration to conform with the Plan. Therefore, the Plan and the Declaration are not in conflict.

**5.** Bankruptcy Rule 8013 provides that findings of fact shall not be set aside on appeal unless clearly erroneous.