In re N–REN CORPORATION, Debtor.

UNION TANK CAR CO., Movant,

v.

N–REN CORPORATION, Debtor.

Bankruptcy No. 1–86–00144.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 30, 1986.

See also, Bkrtcy., 66 B.R. 84.

Timothy J. Hurley, Cincinnati, Ohio, for debtor.

Louis F. Solimine, Cincinnati, Ohio, for movant.

## DECISION AND ORDER ON MOTION TO COMPEL ASSUMPTION OR REJECTION OF LEASE and REQUESTING PAYMENT OF ADMINISTRATIVE EXPENSES

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, filed January 15, 1986, movant filed Motion to Compel Assumption or Rejection of Lease and Requesting Payment of Administrative Expense pursuant to 11 U.S.C. § 503(b)(1)(A). Debtor is a lessor of railroad tank cars from movant under a Car Service Agreement. In its motion, movant says that there are 60 such cars now in the possession of debtor. Further, in its motion, movant says that debtor has failed to make monthly payments as required by the service agreement between the parties which have become due and payable subsequent to the commencement of this case. Movant says that in addition to injury by reason of debtor's failure to assume or reject the service agreement between the parties, possession of the railroad cars which are the subject of the agreement has benefited debtor in the operation of its business as debtor-in-possession. Thereby, says movant, the amounts which have accrued since the commencement of the case are actual and necessary costs of preserving the estate of debtor and should be regarded as administrative expenses pursuant to § 503(b).

Debtor, in effect, responded to the motion by itself filing Motion for Approval of Rejection of Unexpired Personal Property Leases with Union Tank Car Company. On debtor's representation that it no longer has need of the railroad cars which are the subject of its agreement with movant, rejection is in order. This, of course, moots the motion of movant to the extent that it seeks assumption or rejection, but leaves for decision the question of whether mov-

ant is entitled to payments as an administrative expense and, if so, in what amount. The matter came on for hearing, at which time the testimony of witnesses was heard.

Movant established through the director of its fleet leasing service, Steve Babyk, that 61 cars had been leased to debtor pursuant to a Car Service Agreement. His testimony established further that the amount due movant pursuant to the agreement for post-petition rental was $138,-000.00. Debtor, by its corporate manager of transportation, John H. Hanson, offered evidence that in fact during the period post-petition of operation of debtor there were 78 shipments in all. He testified further that if railroad cars had been leased just for the purpose of executing those shipments, the cost to debtor would have been $14,600.00. Debtor asserts that it is only this amount which it should be required to pay to movant as an administrative expense. In addition to the foregoing, debtor established that the cost of carrying out the 78 actual shipments utilizing movant's equipment and applying the lease rates, would have come to $37,170.00.

On this record, the parties require an adjudication by this court as to the amount which debtor should be required to pay to movant on account of leased cars. Movant contends that the amount due is the contract amount, while debtor contends that it should only be required to pay the reasonable cost of actual services provided.

 An initial point is settled by statute and requires no extended discussion. That is that movant can here assert no claim on its contract against debtor in view of the debtor's rejection of the railroad car leases. This is so because debtor is by § 365(a) given the statutory right to reject unexpired leases such as that here in question. The following dictates the consequence of any such rejection:

Section 365. Executory contracts and unexpired leases.

\* \* \* \* \* \*

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under Chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition.

Thus, it is clear that all of a lessor's rights up until the date of rejection are to be regarded and dealt with as a pre-filing breach. It is not part of our present agenda to liquidate such claim if asserted by movant, but that will be left for another day.

What does remain to be dealt with is movant's claim for an administrative expense allowance on account of debtor's retention of possession of the railroad cars subject of the leases. There is no dispute by debtor that movant is entitled to compensation in some amount for such use. There is, however, serious dispute as to the amount. In approaching a resolution of the dispute, two points in contention emerge. The first is whether movant is entitled to be compensated for the retention of possession by debtor of all 61 cars leased by movant to debtor, or whether movant is entitled to compensation only for the extent to which such cars were actually used by debtor. The second question which must be dealt with, is the rate at which movant is to be compensated for the usage of the cars, whether at the contract rate provided for in the agreements between the parties, or at a fair and reasonable rate at which debtor could have secured the same service on the open market.

In approaching the first question, the essence of the competing considerations may be found by considering, on the one hand, *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982). At p. 907 of that case, that court takes the position that the burden should be cast upon debtor "to minimize the costs of administration by acting promptly", that is, to rid himself by rejection of unwanted executory contract entanglements. Not to require debtor to take

such action promptly "encourages dilatory action by the debtor ...". A contrary position is to be found in *In re Intran Corp.*, 62 B.R. 435 (Bankr.Minn.1986), the court there taking issue with the *Fred Sanders* approach, saying that "it is contrary to the whole spirit of the Bankruptcy Code which is to put the burden on creditors to protect their interests." The court in *Intran* held that debtor need pay only "for its actual use of leased property based on the value to the debtor of that use, not what the leased property would have been worth to the lessor. [Citations omitted]." That court looked to provisions of the Bankruptcy Code, specifically §§ 362 and 363, which provide avenues for relief available to a creditor to protect itself.

■ While the language employed is starker than we would use, we believe that the approach of *Intran* is sounder, and supported by the Bankruptcy Code. There is one fact in *Fred Sanders* which may distinguish it, and that is that debtor retained possession of the vans in question pursuant to an agreement between the parties that debtor might do so until the day when rejection occurred. Thereby, there was a cooperation by the creditor which conceivably would entitle it to some consideration. In *Intran*, however, creditor did nothing for seven months after the Chapter 11 case was filed, despite the fact that debtor was making no use of the property which was the subject of the lease. Where a court which appears to adhere to the *Fred Sanders* view, *In re Florida Airlines*, 17 B.R. 683 (Bankr.M.D.Fla.1982) at p. 685, finds unfairness in an imagined scenario where a debtor retains possession of property for two years before abandoning it and rejecting the lease, doing the lessor out of two years' rent and use of his premises, we would put the shoe on the other foot. Such a creditor has ample courses of action available to him under the Bankruptcy Code to prevent such an outcome. The fact of the existence of such recourse to creditors betokens a legislative intent that they be used by creditors. It is no accident that the Bankruptcy Code imposes no affirmative obligation upon a debtor to assume or reject executory contracts or unexpired leases prior to confirmation of its plan, but at § 365(d)(2) lays upon the lessor or creditor an obligation to require quicker action if that is appropriate by seeking an order of the court requiring that debtor assume or reject within some specified period of time prior to confirmation.

Because the conclusion which we reach is grounded upon provisions in the Bankruptcy Code which became effective October 1, 1979, we do not believe that the case of *Dayton Hydraulic Co. v. Felsenthall*, 116 Fed. 961 (6th Cir.1902) is here controlling. *Dayton Hydraulic* did not involve the application of the bankruptcy laws of the United States, but instead was an equity receivership proceeding.

■ There remains then the question of the rate at which creditor should be compensated for the usage which debtor did make of its railroad cars. Our evaluation of the evidence presented at the hearing results in our finding that there were 78 shipments made by debtor. It is conceivable that debtor could have satisfied its needs for railroad cars to make those shipments by locating railroad cars available for short-term lease. This most economical rate would have resulted in a cost to debtor of $14,600.00. If, however, railroad cars were obtained by debtor on the same basis as those which it secured from movant here, its cost for the 78 shipments would have been approximately $37,170.00. It is our judgment that the latter is a fairer basis for arriving at compensation. While a debtor is only required to pay for actual usage of leased property as an administrative expense, it does not seem fair to us that it be able to arrive at an appropriate rate for such compensation on a bargain basement basis.

Accordingly, we allow movant here an administrative expense priority of $37,170.00 for the actual usage made by debtor of its railroad cars post-filing and pre-rejection.

So Ordered.