In the Matter of Richard L. ZOOK and Karen S. Zook, d/b/a Shady Walnut Dairy Farm, Debtors.

Bankruptcy No. GG 86–01755.

United States Bankruptcy Court, W.D. Michigan.

March 4, 1988.

Joseph Mansfield, Lansing, Mich., for debtors.

Jeffrey D. Smith, Kalamazoo, Mich., for AgriStor Leasing.

## OPINION REGARDING ALLOWANCE OF ASSERTED ADMINISTRATIVE PRIORITY CLAIM

JAMES D. GREGG, Bankruptcy Judge.

Does the Debtors' postpetition retention of leased equipment mandate allowance of an asserted administrative priority claim, pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1), when the Debtors have neither rejected nor assumed the lease pursuant to court approval and have not used the equipment since the filing of the bankruptcy petition?

On June 24, 1986, Richard L. Zook and Karen S. Zook, doing business as Shady Walnut Dairy Farm, hereinafter the "Debtors", filed a Voluntary Petition for Relief Under Chapter 11 of the Bankruptcy Code.[1] On May 6, 1980, the Debtors executed an Agricultural Equipment Lease Agreement hereinafter the "lease", with AgriStor Leasing, hereinafter "AgriStor". The lease pertained to farming equipment described as "1–14B 2087 Harvestore & Access" and "1–AG 2074 Goliath Unloader", hereinafter the "equipment".[2] The Debtors ceased using the equipment in April 1986. No lease payments have been made to AgriStor by the Debtors or the bankruptcy estate since May 1986.

In a letter dated July 22, 1986 to AgriStor, one of the attorneys for the Debtors stated:

Pursuant to Bankruptcy Code Section 365 the Debtors hereby reject the unexpired lease with Agri–Stor Leasing.

Bankruptcy Court approval will be necessary to authorize Agri–Stor to remove this structure from the Debtors['] farm. You can expect our full cooperation in this regard.[3]

No Bankruptcy Court approval was sought or obtained regarding the Debtors' purported rejection of the lease in accordance with Bankruptcy Rule 6006. Sometime after the initial letter and before November 3, 1986, the Debtors and AgriStor commenced negotiations regarding the possibility of the Debtors retaining the equipment by restructuring the lease terms. Those negotiations were ultimately unsuc-

---

1. The Bankruptcy Code, as amended, is contained in 11 U.S.C. §§ 101–1330.

2. Testimony established that the leased equipment is one of the ubiquitous "blue silos" and attendant unloading machinery which scatter the countryside in midwestern farmlands.

3. AgriStor Hearing Exhibit B, sometimes referred to as the "initial letter".

cessful.[4] Pursuant to a July 21, 1987 letter, the Debtors, by their attorneys, informed AgriStor that the Debtors, notwithstanding the previous negotiations, still desired to reject the lease.[5] The letter also proposed two alternatives regarding the removal of the equipment, neither of which was acceptable to AgriStor.[6]

On July 16, 1987, AgriStor filed an unsecured claim in the amount of $34,691.12. On October 26, 1987 AgriStor filed an administrative priority claim in the amount of $11,551.64 plus continuing lease expenses of $758.69 per month. On October 26, 1987, AgriStor also filed a Motion for Order Requiring Assumption or Rejection of Executory or Unexpired Lease and Relief from Stay. On October 30, 1987, the Debtors' Objection to Claim of AgriStor Leasing was filed. Also on October 30, 1987, AgriStor filed a Motion to Require Immediate Payment of Administrative Expense. On November 25, 1987, the Bankruptcy Court entered an order which granted AgriStor relief from the automatic stay.[7] Finally, on December 8, 1987 AgriStor filed an amended unsecured claim for $24,253.73 and an amended administrative priority claim of $12,163.39.

On December 11, 1987, the Court held a hearing respecting the Debtors' Objection to Claim of AgriStor and AgriStor's Motion to Require Immediate Payment of Administrative Expense. At that hearing, the Court heard testimony, reviewed exhibits and considered arguments of the parties' counsel. The Court has also reviewed legal memoranda submitted by the parties' counsel and has considered ancillary written closing arguments.

At the hearing, Richard Zook, one of the Debtors, testified that he had not used the equipment since April, 1986.[8] In October 1987, before AgriStor obtained relief from the automatic stay, he refused to allow Michigan Glass Lined Storage, Inc., a local dealer of the equipment, to remove the equipment without a court order or a written statement from AgriStor. Mr. Zook testified he had no proof that Michigan Glass Lined Storage, Inc. was authorized to remove the leased equipment. No testimony was received to the contrary. The Court finds Mr. Zook's testimony to be credible and convincing. The Court also finds Mr. Zook's refusal to permit Michigan Glass Lined Storage, Inc. to remove the equipment without presenting proof of its authority to do so to be reasonable under the then-existing circumstances.

The Court also heard the testimony of Thomas Karbler, a representative of AgriStor, who supervises accounts including the lease agreement with the Debtors. He testified that the amended administrative claim was correct and was for lease payments due from July 1986 through November 1987. Mr. Karbler testified as to the rental value of the equipment based upon approximately 2000 transactions throughout the nation. He testified that there was a surplus of used equipment of similar type to the leased equipment. He stated that the negotiations regarding assumption or rejection of the lease were for the benefit of AgriStor.[9]

## DISCUSSION AND CONCLUSION

11 U.S.C. § 503(b)(1)(A) states as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

---

4. AgriStor Hearing Exhibit C.

5. AgriStor Hearing Exhibit D.

6. AgriStor Hearing Exhibit E.

7. The Debtors consented to AgriStor's request for relief from the automatic stay regarding the equipment. AgriStor Hearing Exhibit F.

8. After that month, no corn or chopped hay was stored in the leased equipment; the Debtors utilized other silos at their farm for storage. In its written closing argument, AgriStor concedes

"it is undisputed that the Debtors have not, in fact, used the equipment since the filing of their Petition for Relief in this proceeding."

9. Based upon the record, the Court believes that AgriStor continued negotiations with the Debtors because it could not immediately market the leased equipment. The Court finds AgriStor participated in negotiations regarding a possible restructuring of the lease terms because it was in its economic interests to do so.

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

The Sixth Circuit Court of Appeals has addressed the issue of allowance of administrative priority expenses in *Employee Transfer Corporation v. Grigsby (In re White Motor Corporation)*, 831 F.2d 106 (6th Cir.1987). In that case, it was held the creditor's asserted postpetition expenses relating to residential real property the creditor purchased prepetition from debtor's employees, pursuant to a contract with the debtor, were not entitled to administrative expense priority. The rationale for the decision was based upon the determination that the asserted administrative claim arose from commitments made before the debtor-in-possession came into existence. In reaching its decision, the court stated:

> The test for whether a claim qualifies for payment as an administrative expense is set forth in *In re Mammoth Mart, Inc.* 536 F.2d 950 (1st Cir.1976). In *Mammoth Mart* the court stated that a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate. *Id.* at 954.

*Id* at 110. *Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984); *In re Armorflite Precision, Inc.*, 43 B.R. 14, 16–17 (Bankr.D.Me.1984), aff'd 48 B.R. 994 (D.Me.1985); *In re Diamond Reo Trucks, Inc.* No. BG74–1778 B5, slip op. at 9–10 (Bankr.W.D.Mich. June 19, 1979), Summarized at [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,162 at 77,303.

In applying the two-part test of *Mammoth Mart*, both criteria must be met to mandate allowance of an administrative expense priority claim. The first prong of the two-part test has not been met because there was no postpetition agreement by and between AgriStor and the debtor-in-possession.[10] The second prong of the test has likewise not been established. The Debtors ceased using AgriStor's equipment in April 1986, prior to the commencement of the case. Since the Debtors did not use the equipment postpetition, there exists no direct or substantial benefit to the estate notwithstanding AgriStor's participation in negotiations regarding the Debtors' possible assumption of the lease or the restructuring of the lease terms.

The Court is aware of *In the Matter of Fred Sanders Company*, 22 B.R. 902 (Bankr.E.D.Mich.1982), in which Judge Brody granted an administrative expense priority claim for accumulated postpetition lease payments in an instance where the debtor did not use three leased vehicles prior to rejection of the lease. AgriStor argues that this Court should follow the *Sanders* case. This Court declines to do so. The result of *In the Matter of Fred Sanders Company* may be distinguished from the facts of this contested matter.

First, in *Sanders*, the lessor filed an application requesting the court to establish a deadline for the debtor to assume or reject the lease. Second, the debtor, the lessor and the creditors' committee entered into a post-petition agreement, presumably approved by that Court, which allowed the debtor to retain the possession and the opportunity to use the vehicles pending assumption or rejection of the lease.[11] Third, there likely existed an immediate market for the leased vehicles and, as a result of the creditor's forbearance, the creditor was denied the ability again to lease or sell the vehicles. Fourth, there is some indication that Judge Brody considered the practicalities of the case. This Court recognizes the vehicles in *Sanders* might be readily moved, easily damaged or subject to continued measurable depreciation. All of the above distinguishing factors are not

---

**10.** The record further fails to establish that AgriStor gave any consideration to the debtor-in-possession by merely leaving the leased equipment at the Debtors' farm during the pendency of the negotiations.

**11.** This distinguishing factor was also recognized in *Union Tank Car Co. v. N–Ren Corporation (In re N–Ren Corporation)*, 68 B.R. 404, 407 (Bankr.S.D.Ohio 1986).

present with regard to the leased equipment of this case. Finally, and most importantly, in *Sanders* the court apparently did not consider the applicability of the two-part test of *In re Mammoth Mart, Inc.,* which has been recognized and cited approvingly by the Sixth Circuit Court of Appeals.[12]

Because the debt did not arise from a transaction between the debtor-in-possession and AgriStor and the Debtors' post-petition retention of the equipment did not result in any benefit to the Debtors' estate, the Court holds that AgriStor's claim is not entitled to administrative priority under 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1). AgriStor's asserted administrative priority claim is therefore disallowed and its request for immediate payment of its asserted administrative expense is denied. The Agricultural Equipment Lease Agreement by and between the Debtors and AgriStor is deemed rejected.[13] There being no objection thereto, AgriStor's amended claim for unpaid prepetition lease payments, in the amount of $24,253.73, is allowed as a general, non-priority, unsecured claim. AgriStor is also hereby granted thirty (30) days to amend its allowed unsecured claim to assert any damages incurred as a result of rejection of the lease pursuant to 11 U.S.C. § 502(g) and Bankruptcy Rule 3003(c)(3). An order shall be entered accordingly.

---

**12.** Because the test set forth in *In re Mammoth Mart, Inc.* has not been met, it is not necessary for this Court to address the issue of the reasonable rental value of the leased equipment and whether the amount of the lease payments shall be presumed to reflect the fair rental value.

**13.** In accordance with the Bankruptcy Rules 6006, 7015 and 9014, notwithstanding the Debtors' failure to file a formal motion to reject the lease, the Court has authorized rejection of the lease. The Court finds that this issue was tried by the implied consent of the parties. Further, AgriStor has previously obtained a modification of the automatic stay of proceedings to take possession of the equipment.