**In re The ELDER–BEERMAN STORES CORP., et al., Debtors.**

**Bankruptcy No. 95–33643.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Sept. 4, 1996.

---

Thomas W. Coffey, Cors & Bassett, Cincinnati, OH, for Star Bank, N.A.

Gregory P. Garner, Altick & Corwin, Dayton, OH, for The Elder Beerman Stores Corp.

## DECISION AND ORDER AWARDING SECURITY PAYMENTS ON PERSONAL PROPERTY TRANSACTIONS

WILLIAM A. CLARK, Chief Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing order of reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

### PROCEDURAL HISTORY

This matter is before the court upon Star Bank, N.A.'s Motion for Establishment of Lease Payment Security Procedures [970–1], the Debtors' Objection and Memorandum in Opposition [1061–1], and Star Bank's subsequent Reply Memorandum [1184–1].

The underlying dispute originally came before the court on the Motion of Star Bank, N.A. To Compel Payment of Post–Petition Equipment Lease Obligations. [584–1], filed March 8, 1996. On March 29, 1996, the Debtors instituted Adversary Proceeding 96–3070 by filing a Complaint for Declaratory Judgment [Adv.Pro., 1–1]. On April 12, 1996, this court entered a Stipulation and Agreed Order [Adv.Pro., 6–1] consolidating Star Bank's Motion with the adversary proceeding.

Subsequent to the April 12 Order, on May 24, 1996, Star Bank, N.A. filed its Motion for Establishment of Lease Payment Security Procedures. While the May 24, 1996 Motion is in many ways duplicative of the issues raised in the March 8, 1996 Motion, the court finds that there are sufficient independent issues at bar to justify separate consideration by the court, without consolidating the matter into the now pending adversary proceeding. After notice and a hearing held on July 29, 1996, the issues raised in the May 24, 1996 Motion are now ripe for determination.

## FACTS

In order for the court to address the parties' dispute with any degree of clarity, it is necessary to first consider some of the underlying facts. Because the parties have not yet had an opportunity for full adjudication of these facts, this recitation is operative only for the purposes of this Order. It should be not be considered dispositive to the underlying issues yet to be considered in the independent adversary proceeding, or in any other proceeding.

Beginning on December 28, 1990, and continuing through several subsequent dates, Movant Star Bank, N.A. and Respondents/Debtors the Elder Beerman Stores Corp., Inc., et al. entered into a series of transactions providing for quarterly payments by Debtors in return for the use of certain items of personal property, including an automated warehouse shipping system. The nature of these transactions is important, as it will determine what obligations are owed by the Debtors during the pendency of the present case. Each of the these transactions is embodied in a written agreement, and each agreement is on its face unambiguously titled a lease, i.e. "Master Equipment Lease" or "Acceptance Supplement (True Lease)."

On October 17, 1995, the Debtors filed for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (1994) (the "Bankruptcy Code" or the "Code"). From that point in time to the present, the Debtors have not made any of the quarterly payments alleged due under the above agreements. The Debtors contend that the transactions in question are properly characterized as security agreements, and as such, that Debtors are not obligated to make the quarterly payments. Instead, the Debtors allege that Star Bank, N.A. must pursue its claim through the normal claims resolution process. Star Bank, in turn, alleges that the transactions in question are lease agreements, and as such, the Debtors are obligated to make all payments which come due after the 60 day abeyance period provided for in 11 U.S.C. § 365(d)(10). This dispute, as to the nature of the transactions, is the subject of the aforementioned adversary proceeding.

Star Bank, N.A. now appears before this court requesting the establishment of "lease payment security procedures." It contends that this court can and should address the issue of adequate protection at this time, without waiting for the resolution of the adversary proceeding. If the Debtors were required to make all quarterly and past due payments on the above agreements, Star Bank alleges that that amount would convert to a monthly obligation of approximately $42,000.00. Star Bank therefore requests that Debtors be required to pay that amount monthly directly to Star Bank, or in the alternative into a separate escrow account established by this court. The contents of the escrow account would be paid to Star Bank or refunded to the Debtors, depending on this court's decision in the adversary proceeding.

Debtors are in agreement that this issue is ripe for decision, and agree that in the event the court determines any payments are fitting, payments to an escrow account pending resolution of the adversary proceeding would be the proper way to proceed. The amount of such payments is disputed by the Debtors. If the court were to determine that such payments are necessary, the Debtors contend that Star Bank is presently only entitled to administrative expenses as far as any may be shown under 11 U.S.C. § 503(b)(1)(A). Debtors offer $2,885.75 as an appropriate amount.

## CONCLUSIONS OF LAW

■ The question presented to the court is whether a debtor may avoid the obligation under 11 U.S.C. § 365(d)(10) to "timely perform all of the obligations ... first arising from or after 60 days after the order for relief ... under an unexpired lease of personal property" while awaiting a court determination of whether the transactions in question are leases or security interests. For the reasons more clearly stated below, the court finds that where the debtor is faced with agreements unambiguously titled as "leases," the debtor must fully perform all obligations arising under § 365(d)(10) until such time as

the court may find the agreements to be other than leases, or that other equitable relief is appropriate.

The matter *sub judice* turns on what is essentially new bankruptcy law. Prior to 1994, the Bankruptcy Code by way of § 365(d)(3) required debtors to perform all post-petition obligations due under unexpired nonresidential real property leases, but was silent as to debtors' obligations under commercial personal property leases. A substantial body of case law has developed for setting post-petition administrative rent on both personal and real property leases prior to assumption or rejection. This body of law is significant, not only because the parties at bar have devoted much of their time and energy in debating it, but as also because it provides the court with the proper foundation for analyzing the recent changes made to the Bankruptcy Code.

Prior to the enactment of the 1994 amendments, it was first necessary for a lessor seeking administrative expense payments for post-petition, pre-rejection or assumption rent to establish that the lessor had conferred some benefit to the estate. *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir.1987). Once this had been established, it was then necessary for the court to determine the value of the administrative expense due.

In making value determinations, many courts adopted what is called the "subjective" approach, allowing the court to weigh factors such as the debtor's current use of the property, the property's fair market value, and the benefit conferred to the estate in making its determination of administrative rent due. *See, e.g., Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 867 (4th Cir.1994); *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130, 1133 (10th Cir.1993). Other courts adopted what has been called the "objective" approach, allowing the court to determine the amount due, but holding more firmly to the rent as set forth in the lease itself. *See, e.g., Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401, 404–05 (9th Cir.1994); *In re Fred Sanders Co.*, 22 B.R. 902, 905–07 (Bankr.E.D.Mich.1982). Judge

Learned Hand's analysis of this issue in an often-cited pre-Code case has been used as support for both theories. *Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir.1939) ("[T]he trustee need not pay the rent during the probationary period, and the court will hold off the lessor, and force him to be content with the value of the use and occupation meanwhile, though ordinarily it will fix that at the same amount as the rent.").

Because both approaches allow the court to adjust the rent due, the difference between the two approaches resolves practically into an allocation of burdens of proof and presumptions. Under the subjective approach, it falls upon the party seeking the administrative payment to prove the benefit conferred to the estate. *Dobbins*, 35 F.3d at 867 (consistent with the initial burden of proof under *White*). Under the objective approach, the debtor bears the burden of showing why the rent as set forth in the lease itself should not be awarded. *Sanders*, 22 B.R. at 906 ("To permit a debtor to deprive a lessor of the use of his property and unilaterally dictate the amount of the lessor's claim does not comport with elementary notions of justice.").

Although the *Sanders* case, one of the primary authorities in favor of the objective approach, comes from a court within the Sixth Circuit, other courts within this Circuit are equally divided. *Compare In re Zook*, 83 B.R. 447, 449 (Bankr.W.D.Mich.1988) (subjective approach); *Union Tank Car Co. v. N–Ren Corp. (In re N–Ren Corp.)*, 68 B.R. 404, 406–07 (Bankr.S.D.Ohio 1986) (J. Perlman) (subjective) *with In re Grimm & Rothwell, Inc.*, 108 B.R. 186, 190 (Bankr.S.D.Ohio 1989) (J. Cole) (objective approach); *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr. E.D.Mich.1982) (objective).

With this split of authorities in mind, the court now turns its attention to the recent change in the statutory treatment of commercial personal property leases. On October 22, 1994 the Bankruptcy Reform Act of 1994 (the "Act") became effective. Pub.L. No. 103–394, 108 Stat. 4106 (1994). This Act changed the statutory scheme in several ways. In addition to amending several then-existing provisions of the Bankruptcy Code,

the Act also added a new provision, § 365(d)(10). Section 365 states, in pertinent part:

The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title *under an unexpired lease of personal property* (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, *unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.*

11 U.S.C. § 365(d)(10) (1994) (emphasis added).

■ It is important to note that while Congress could have, as was proposed by the Senate, simply amended the then-existing provisions of § 365(d)(3) to include commercial personal property leases, it chose instead to adopt a similar though not identical scheme in § 365(d)(10). For example, the 60–day "breathing room" created by the 1994 Act is unique to personal property leases. As the legislative history demonstrates, however, Congress adopted this section to "shift to the debtor the burden of bringing a motion [to assume or reject the lease] while allowing the debtor sufficient breathing room after the bankruptcy petition to make an informed decision." 140 Cong.Rec. H10,752–01 (daily ed. October 4, 1994).

■ It is therefore clear to the court that the 1994 amendments have affected the pre-amendment statutory scheme of commercial personal property leases in two significant ways. First, by shifting the burden of proof from the lessor to the debtor, § 365(d)(10) makes it unnecessary for the lessor to make an initial showing of benefit conferred to the estate in order to be entitled to administrative rent. After the passage of the 60–day abeyance period, the entitlement to such rent is now automatic under § 365(d)(10). Second and equally important, it is this court's determination that by shifting the burden of proof to the debtor, Congress has also tacitly adopted the objective approach to administrative rent valuation. It therefore falls upon the debtor to demonstrate, as the language of § 365(d)(10) pertaining to the equities of the matter permits, that something less than the rent due under the contract should be awarded.

The parties also dispute to what extent these obligations may be modified. The language of § 365(d)(10) which permits the court, "based on the equities of the case," to modify the obligations or timely performance due thereunder must be balanced with another 1994 revision, the language in § 363(e). Prior to the enactment of the Bankruptcy Reform Act, § 363(e) stated:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e) (1994).

■ Under the unamended section, courts generally held that lessors were unentitled to § 363(e) relief on adequate protection grounds. *See, e.g., In re Sweetwater,* 40 B.R. 733 (Bankr.D.Utah 1984), *aff'd,* 57 B.R. 743 (D.Utah 1985). The 1994 Act amended § 363(e) to include the following provision: "This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362)." 11 U.S.C. § 363(e). Thus after the 1994 revisions, lessors of personal property who lack adequate protection may elect to seek relief from the automatic stay under § 362 or to seek equitable remedies under § 363(e). The court must therefore balance any reduction in obligations of a debtor under § 365(d)(10) with the creditor's adequate protection under these sections.

Thus having determined the extent to which the 1994 Act has altered the statutory approach to post-petition, pre-assumption or rejection administrative rent payments for

commercial personal property leases, it is now necessary for the court to more closely examine the events *sub judice.*

At the close of the Debtors' 60–day breathing period, the Debtors chose neither to bring a motion challenging the inequity of requiring lease payments, nor to bring a motion to assume or reject the "leases." Instead, the Debtors did nothing, and allowed the obligations under the "leases" to go unfulfilled. It was not until Star Bank petitioned this court to compel the Debtors to comply with § 365(d)(10) that the Debtors responded by challenging the nature of the transactions.

■ It is clear that if the transactions in question are not leases, but are instead security transactions, no obligations under this Code section are due. Section 365(d)(10) by its own terms applies only to "unexpired lease[s] of personal property." The nature of these transactions is an issue of state law, and will be determined in the pending adversary proceeding.

The question then before the court is whether a debtor may avoid its obligations under § 365(d)(10) during the pendency of a challenge to the nature of the underlying transactions. The court finds that in the limited circumstances extant in this case, that is where the debtor is faced with agreements unambiguously titled as "leases," the debtor may not circumvent the requirements of § 365(d)(10) while challenging the nature of the agreements.

As legislative history indicates, § 365(d)(10) is designed to grant the debtor limited "breathing room." To allow the debtor to extend this abeyance period on commercial personal property lease obligations while bringing challenges to the nature of the leases would be to allow the debtor to circumvent the 60–day limitation built into § 365(d)(10).

■ Where an agreement at issue appears on its face to be a commercial personal property lease, the debtor is charged by § 365(d)(10) to timely perform all duties of the agreement which arise 60 days after the Chapter 11 petition, until such time as the debtor is relieved of the obligation. The debtor may be relieved of the obligation by rejecting the lease under § 365(a), by leave of the court due to the equities of the matter under § 365(d)(10), or as may happen in the instant case, by a determination of the court that the transactions are not in fact leases. As with the case of a creditor that believes it is entitled to relief from the automatic stay under § 362(d), until such time as the court grants the relief in question, the obligations or restrictions must be complied with.

In addition, where the debtor has allowed the 60–day abeyance period to lapse yet fails to challenge or fulfill its obligations, the court is reluctant to retroactively apply any equitable analysis under § 365(d)(10). To do so would be to dilute the duties Congress intended to impose upon the debtor when the 60–day period was created. *See* 140 Cong. Rec. H10,752–01 (daily ed. October 4, 1994) (quoted *supra* ). This too, is similar to the court's treatment of the automatic stay, in that most courts are, absent extraordinary circumstance, extremely reluctant to grant retroactive relief by annulling the stay. *See In re Elder–Beerman Stores Corp.,* 195 B.R. 1012, 1017 (Bankr.S.D.Ohio 1996), and the cases cited therein.

In the case at bar, the court finds that it is not inequitable to require the Debtors to continue to perform on their "lease" obligations until the court has had an opportunity to weigh the facts of the matter. This is consistent with the findings of the courts that have had an opportunity to address issues under § 365(d)(10). *See In re Leisure Time Sports, Inc.,* 189 B.R. 511, 513 (Bankr. S.D.Cal.1995); *In re Brennick,* 178 B.R. 305, 308 (Bankr.D.Mass.1995) (comparing § 365(d)(10) to § 365(d)(3), which the court stated "provides a right ... not a remedy."). In addition, by requiring the Debtors to make such payments as are due under the agreements, Star Bank is protected in the event that the case is converted to Chapter 7 or the estate becomes "administratively insolvent." *Leisure Time,* 189 B.R. at 513.

The court is in agreement with the parties that directing the payment of these obligations into an escrow account at a separate institution is in the best interest of both parties. The Debtors are protected in the

event that the court later decides that the agreements in question are not in fact leases, or that the agreements are leases but that the amount due under the leases is inequitable under § 365(d)(10). Star Bank is protected as stated above, and in that the Debtors are required to perform the obligations expressly placed upon them by the Bankruptcy Code.

## CONCLUSION

It is therefore the conclusion of the court that the Debtors must perform all obligations under § 365(d)(10) until given leave by the court to do otherwise. Thus until the resolution of the underlying issues in the pending adversary proceeding, the Debtors are ordered to make all payments that have come or will come due after the expiration of the 60–day post-petition abeyance period.

The Debtors are directed to establish a separate interest-bearing escrow account at a financial institution other than Star Bank, with a provision requiring the payment of the account funds in conformity with this court's resolution of The Elder–Beerman Stores Corp. v. Star Bank, N.A., Adversary Proceeding 96–3070. The contents of this account are to be considered the property of Star Bank, subject only to a decision adverse to Star Bank in the above-mentioned adversary proceeding.

It is therefore this court's determination that subject to the above-stated conditions, Star Bank, N.A.'s Motion for Establishment of Lease Payment Security Procedures should be, and hereby is, GRANTED.

It is so ordered.