In re CIRCUIT–WISE, INC., Debtor.

Wells Fargo Equipment Finance, Inc. f/k/a Norwest Equipment Finance, Inc., Movant,

v.

Circuit–Wise, Inc., Respondent.

No. 01–31518 (LMW).

United States Bankruptcy Court, D. Connecticut.

April 23, 2002.

Jane W. Arnone, Benanti & Associates, Stamford, CT, for Movant.

Matthew K. Beatman, Zeisler & Zeisler, P.C., Bridgeport, CT, for Respondent/Debtor.

Robert E. Kaelin, Murtha Cullina, L.L.P., Hartford, CT, for Official Committee of Unsecured Creditors.

## PARTIAL RULING ON WELLS FARGO EQUIPMENT FINANCE, INC.'S MOTION BROUGHT UNDER BANKRUPTCY CODE § 365(d)(10)

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matter before the court is Wells Fargo Equipment Finance, Inc.'s motion brought under Bankruptcy Code § 365(d)(10) (Doc. I.D. No. 227, the "Motion"). This matter is a "core proceeding" within the purview of 28 U.S.C. § 157(b).

### I. BACKGROUND

The above-captioned debtor and debtor in possession (the "Debtor") executed and delivered to Celtic Leasing Corp. (together with its relevant successors in interest, "Wells Fargo") a certain Master Lease Number CML–0373–A dated May 16, 1996 (collectively with Lease Schedule No. 2 thereto dated September 17, 1997, Lease Schedule No. 3 thereto dated September 16, 1997 and certain relevant documents, agreements or instruments executed and/or delivered in connection with said Master Lease and schedules, the "Lease").

The Motion asserts that, pursuant to the Lease, the Debtor leased from Wells Fargo certain equipment described in the Lease.

On March 28, 2001 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition under title 11 of the Bankruptcy Code. The Debtor has not made any payments under the Lease since the Petition Date. Wells Fargo filed the Motion on January 14, 2002. As of the date hereof, the court has not issued an order approving an assumption or rejection by the Debtor in respect of the Lease under Bankruptcy Code § 365 (to the extent, if any, that Section 365 applies to the Lease), although the Debtor's motion to reject the above-referenced Schedule 2 (to the extent, if any, that the same constitutes an unexpired equipment lease) is pending.[1]

Among other things, the Motion asserts that, pursuant to Bankruptcy Code § 365(d)(10),[2] the Debtor must pay to Wells Fargo all amounts which are due or hereafter come due under the Lease until the Debtor assumes or rejects the Lease or this court orders otherwise. The Debtor (supported by the Official Committee of Unsecured Creditors (the "Committee")) responds (among other things) that the Lease is not a "true" or "bona fide" lease but, rather, is a disguised "security agreement" within the purview of Bankruptcy Code § 101(50). Accordingly, the Debtor argues, the Lease is not entitled to the protections of Section 365(d)(10). Focusing on the temporal aspects of Section 365(d)(10), Wells Fargo argues that the Lease is at least presumptively a "lease" within the purview of Section 365(d)(10) and is entitled to the protections thereunder at least until the court rules that the Lease is a security agreement rather than a "true" or "bona fide" lease. The Debtor argues that, because the Lease's status as a "true" or "bona fide" lease has been duly questioned, the Lease is not entitled to protection under Bankruptcy Code § 365(d)(10) until and unless this court rules that the Lease is a "true" or "bona fide" lease.[3]

The Timely–Payment Issue was briefed by the parties (including the Committee) and the matter came on for a (continued) hearing on April 9, 2002. After oral argument, the court reserved its decision on the Timely–Payment Issue and directed the parties to prepare and submit a proposed pre-trial order in respect of further proceedings on the Motion. That pre-trial order was to be premised on bifurcated proceedings: a hearing on the Section 365(d)(10) "equities of the case" and cer-

1. The Debtor filed that motion (Doc. I.D. No. 237) on February 4, 2002.

2. Section 365(d)(10) provides as follows:

The … [debtor in possession] shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof…. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.
11 U.S.C.A. § 365(d)(10) (West 2002).

3. The above-stated issue of *when* a putative equipment lessor's right to protection under Section 365(d)(10) begins when the status of the subject lease as a "true" or "bona fide" lease has been duly questioned is referred to hereafter as the "Timely–Payment Issue". This ruling is limited strictly to the Timely–Payment Issue; the court expresses no opinion as to any other issue in respect of the Motion.

tain other issues would be held first; the hearing on the ultimate "true" or "bona fide" lease issue would be deferred (on the apparent agreement of the parties). As of the date hereof, a proposed pre-trial order has not been submitted by the parties. However, having had the benefit of further consideration, the court issues this ruling with respect to the Timely–Payment Issue. For the reasons discussed below, the court holds that Wells Fargo is not and will not be entitled to the protections of Section 365(d)(10) until and unless this court determines that the Lease is a "true" or "bona fide" lease. Accordingly, the court will schedule a status conference to discuss the appropriate scheduling of further proceedings in respect of the Motion in light of this partial ruling.

## II. *DISCUSSION*

■ The court believes that the "plain meaning" of Section 365(d)(10) is dispositive of the Timely–Payment Issue. That is because (unless otherwise expressly stated) the Bankruptcy Code provides different rights and remedies for lessors and holders of "security interests" (as defined in Bankruptcy Code § 101(51)). *See In re Sweetwater,* 40 B.R. 733 (Bankr.D.Utah 1984) (superseded in part by statute), *aff'd,* 57 B.R. 743 (D.Utah 1985). On its face, Section 365(d)(10) requires that for a person or entity to obtain the protections of Section 365(d)(10), that person or entity must be a lessor and not the holder of a security interest. Thus, Wells Fargo cannot prevail on the Timely–Payment Issue because the "plain meaning" of Section 365(d)(10) leaves no room for judicial construction. *Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts ... is to enforce it according to its terms." (citations and internal quotation marks omit-

ted)). However, even if Section 365(d)(10)'s "plain meaning" were not dispositive here, for the reasons discussed below this court's ruling on the Timely–Payment Issue would not change.

■ Under other subsections of Bankruptcy Code § 365, it is well-settled that the term "lease" (which is not specifically defined in the Code) refers only to "true" or "bona fide" leases and does not refer to agreements which, although labeled "leases", are actually disguised "security agreements" within the purview of Bankruptcy Code § 101(50). *See International Trade Administration v. Rensselaer Polytechnic Institute,* 936 F.2d 744, 748 (2d Cir.1991) ("lease" as used in Section 365(d)(4) means "true" or "bona fide" lease); *Liona Corp., N.V. v. PCH Associates (In re PCH Associates),* 804 F.2d 193, 198 (2d Cir.1986) ("lease" as used in Section 365(d)(3), (4) means "true" or "bona fide" lease). *Accord City of San Francisco Market Corp. v. Walsh (In re Moreggia & Sons, Inc.),* 852 F.2d 1179, 1182 (9th Cir.1988) ("lease" as used in Section 365(d)(4) means "bona fide" lease).

■ Wells Fargo construes the term "lease" as used in Section 365(d)(10) to mean a presumptive or putative lease, with the "true" or "bona fide" lease analysis relegated to an analysis of the "equities of the case" to which the subsection later refers. However, that construction flies in the face of the well-established rule of statutory construction that presumes that a term used in a statute (here Section 365) has a uniform meaning throughout the statute. *See Cohen v. de la Cruz,* 523 U.S. 213, 220, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("[E]quivalent words have equivalent meaning when repeated in the same statute." (citation omitted)); *Commissioner of Internal Revenue v. Lundy,* 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611

(1996) (superseded by statute) ("The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." (citation and internal quotations omitted)).[4]

Furthermore, the court believes that Wells Fargo cannot prevail on the Timely–Payment Issue for three additional interrelated reasons. First, as noted above the "true" or "bona fide" lease meaning has been applied by the courts in the context of Sections 365(d)(3) and (4). Like Section 365(d)(10), Sections 365(d)(3) and (4) are provisions providing special protections for a specific (albeit different) class of business lessors (i.e., lessors of nonresidential real property). *Compare* 11 U.S.C. §§ 365(d)(3), (d)(4) *with* 11 U.S.C. § 365(d)(10). Second, Section 365(d)(3) (enacted in 1984) was, in some sense, the model for Section 365(d)(10) (enacted in 1994 and differing in some respects from Section 365(d)(3)). *See The Elder–Beerman Stores Corp.*, 201 B.R. 759, 763 (Bankr.S.D.Ohio 1996) ("... Congress could have, as was proposed by the Senate, simply amended the then-existing provisions of § 365(d)(3) to include commercial personal property leases, [but] it chose instead to adopt a similar though not identical scheme in § 365(d)(10)."). Third, when Congress enacted Section 365(d)(10) in 1994, it must be presumed to have done so with knowledge of the then-existing precedents construing the term "lease" as used in Sections 365(d)(3) and (4) as meaning only "true" or "bona fide" leases. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381–82, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (Congress is assumed to act with knowledge of existing judicial precedents when Congress enacts legislation.). Accordingly, the court believes that Congress' use of the word "lease" in Section 365(d)(10) without any qualifier equivalent to the label "presumptive", "putative" or the like, is dispositive here.

Wells Fargo argues that if the court reaches the result which it does here, debtors routinely will raise the "true" or "bona fide" lease issue for no other reason than to delay the day when their Section 365(d)(10) "timely perform[ance]" obligations will begin. The court is not insensitive to that possibility. However, the court is convinced that appropriate protections can be structured for the putative equipment lessor while the "true" or "bona fide" lease issue is being adjudicated and that a strained construction of Section 365(d)(10) is not necessary to accomplish that result. For example, a putative equipment lessor's request for a reasonably expedited trial schedule for (and a prompt decision on) the "true" or "bona fide" lease issue ordinarily should be liberally granted. Similarly, grant of a debtor's request for a more extended adjudication schedule for that issue might, in an appropriate case, be conditioned on the debtor's posting appropriate security to protect the putative equipment lessor's accruing claim for administrative rent in the event that the "lessor" ultimately prevails on the "true" or "bona fide" lease issue.

4. So-called "rules" of statutory construction are aids to which courts resort when an issue of construction cannot be resolved by resort to the "plain meaning" of the statute or to legislative history. *See Connecticut National Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Here, the court assumes for purposes of argument that the Timely–Payment Issue cannot be disposed of on the "plain meaning" of Section 365(d)(10). No dispositive legislative history has been cited by the parties and the court itself has searched for and has been unable to locate any such dispositive legislative history.

Moreover, if the court determines that the debtor's pleadings raising the "true" or "bona fide" lease issue were filed for an "improper purpose" within the purview of Rule 9011(b)(1) of the Federal Rules of Bankruptcy Procedure, an award of attorney's fees in the lessor's favor might be in order. *See* Fed. R. Bankr.P. 9011.

Accordingly, for the reasons set forth above, the court holds that Wells Fargo is not and will not be entitled to the protections of Section 365(d)(10) until and unless this court determines that the Lease is a "true" or "bona fide" lease. *Cf. PSINet, Inc. v. Cisco Systems Capital Corp. (In re PSINet, Inc.),* 271 B.R. 1, 38 (Bankr. S.D.N.Y.2001) ("[I]t is indeed necessary, as a prerequisite to determining whether an equipment lessor has rights under section 365 . . . to periodic payments under section 365(d)(10) . . . to determine *first* whether the agreement denominated as a lease is indeed a true lease." (emphasis added)). To the extent that *In re The Elder–Beerman Stores Corp.,* 201 B.R. 759, is inconsistent with this ruling, this court respectfully declines to follow *Elder–Beerman Stores.*

### III. *CONCLUSION*

The court hereby issues the partial ruling set forth above. An order will issue scheduling an on-the-record status conference with the parties to discuss the appropriate scheduling of further proceedings on the Motion in light of this partial ruling.