**In re The HOPKINS CORPORATION dba Fisher Hardware, Debtor.**

**Bankruptcy No. 3–84–02563.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 14, 1987.

Daniel Buckley, Wilmington, Ohio, for David and Marjorie Adair.

John T. Ducker, Dayton, Ohio, Trustee.

Roy D. Boucher, Kettering, Ohio, for debtor.

## DECISION AND ORDER ON APPLICATION FOR ADMINISTRATIVE EXPENSE AND CLAIM AGAINST SALE PROCEEDS

WILLIAM A. CLARK, Bankruptcy Judge.

This matter came before the court upon the application of David N. Adair and Marjorie J. Adair for postpetition rent for the storeroom occupied by debtor-in-possession as administrative expense and for damages resulting from wrongful removal and sale of their fixtures and other property.

A hearing was held on September 17, 1986 followed by memoranda of counsel for the Adairs and the trustee.

The bankruptcy case file reveals that this case was filed under chapter 11 of title 11 on November 20, 1984, that the debtor attempted without success to provide a plan for the payment of creditors, and that debtor converted the case to a case under chapter 7 of title 11 on April 14, 1986. The trustee moved promptly to appraise and sell the debtor's inventory and store fixtures used in a hardware business at 469 Dayton Avenue, Xenia, Ohio.

### CLAIM FOR RENT

With respect to the Adairs' claim for administrative expense for the postpetition rent for the storeroom, the Adairs' claim does not distinguish between rent accrued from the original filing of the chapter 11 case until the case was converted on April 14, 1986 and the rent accrued from the date of the conversion until the storeroom was vacated after an auction sale on June 28, 1986. Although there was no testimony as to the monthly rental under a lease, the claim for administrative expenses states that the total postpetition rent incurred by the debtor is $14,887.46 and acknowledges that the debtor has paid rent of $8,092.80. The rental claim must be separated into two claims. One claim for the rent from the petition date to the conversion date and the second for the period from the conversion date to the date of the surrender of the premises, about June 30, 1986, which is a period of three months.

The rental for the first period was for the hardware store operation during the time debtor-in-possession operated until he closed the store some time before the date of conversion. The rent was a necessary expense of the operation of the business and served to preserve the estate assets. As such expense in this bankruptcy the rent is an administrative expense under

the provisions of 11 U.S.C. § 503(b)(1)(A) which provides:

> (1)(A) The actual necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case.

However, the Adairs must file a proof of claim to establish the amount of rent claimed for the period that the business operated under chapter 11 of title 11.

■ As to the three month period during which the trustee had dominion and control over the assets of the debtor, the rental for the storeroom is a valid administrative expense. The trustee's use of the storeroom was necessary and preserved the assets of the estate until those assets could be sold. For such valuable service an allowance for rent is justified to the extent that the Adairs' storeroom was used for the storage of the inventory and fixtures. The case being in liquidation during that period, the trustee received benefit in preserving the estate. That benefit is measured by the value of the storage. There being no testimony to establish an exact rental value, the court will permit the Adairs 30 days within which to file separate proofs of claim for the three (3) months during which the assets were located in the leased premises and for the period the debtor-in-possession operated the business under chapter 11.

## CLAIM FOR DAMAGES

■ The testimony of the Adairs consisted of Mr. Adair's testimony and cross-examination of the auctioneer and his employees. Such evidence revealed that Mr. Adair spoke with the auctioneer before the sale, was present a few minutes during the sale and spoke with an auctioneer's employee following the sale. Before the sale Mr. Adair instructed the auctioneer that an awning frame was to remain in the premises. There is no other evidence of any instructions by David Adair to the auctioneers. He testified his property included 500 lineal feet of shelving around three walls of the building, brackets, pegboards and merchandise racks which were there before tenants leased the building from

him. He testified that on the Monday after the sale, after viewing the building, he was driving to Wilmington when it occurred to him that "all that shelving is gone."

The auctioneer and his employees testified to the fact that the pegboard and shelving have the characteristics of store fixtures and they understood the trade fixtures belonged to the bankrupt estate.

Determination of whether fixtures are part of the real estate or remain personal property is difficult in any case. Some aid for determining the question is given in 50 Ohio Jur 3rd, Fixtures, Sec. 21, at 120:

> [I]n determining whether or not a given article is a trade fixture, the intention of annexation is a primary consideration; and a tenant may remove fixtures which he places on the premises for his own personal use, and which are adapted to the use of his profession or business, and which are removable with the least possible damage to the freehold.

> Items such as the following have been held to be trade fixtures: counters, drawers, and shelving; bookcases and shelves; wall cases in a drugstore; ...

In this case the store fixtures sold have all the characteristics of trade fixtures, However, the only evidence as to the ownership of the fixtures presented was Mr. Adair's uncontroverted evidence the court accepts the Adair testimony as to ownership. However, the owner had an obligation to identify his property before the sale.

Mr. Adair's actions demonstrate negligence by failing to identify property he owned in the store. Although he excepted the awning frame from the sale items, he was silent as to any other property.

*In re Ellison Associates,* 63 B.R. 756 (S.D.N.Y.1983) recites the elements of equitable estoppel and estoppel by silence, at page 764 and 765, as follows:

> [T]he party to be estopped must: (1) demonstrate conduct which amounts to a false representation or concealment of material facts or which gives the impression that the facts are otherwise than as asserted; (2) intend or expect that such

conduct will be relied upon by the other party; and (3) have actual or constructive knowledge of the real facts. The party asserting the estoppel must: (1) lack knowledge and the means of acquiring knowledge of the real facts; (2) rely on the conduct of the party to be estopped and (3) act in such a way as to prejudicially change its position. (Citation omitted)

...[t]he estoppel by silence doctrine, which requires (1) the duty to speak, (2) an opportunity to speak, and (3) an injury to another party as a result of the failure to speak. (Citation omitted)

Mr. Adair's failure to speak up to the auctioneer to claim any property he owned in the store except for the awning frame satisfies the requirements for the use of the doctrine of equitable estoppel in this case.

The Adairs, having had the opportunity to prevent the sale of store fixtures by identifying them, are estopped from claiming damages for the sale of those fixtures. Mr. Adair acquiesced in their sale and can not now claim damages, since the auctioneer acted upon Mr. Adair's silence and the trustee and many bona fide purchasers have changed their position based upon his failure to prevent a sale of store fixtures.

The debtor listed fixtures and equipment in schedule B–2(k) of the petition. The trustee's appraiser included inventory and store fixtures in his appraisal report. The trustee's notice to all creditors, including the Adairs, gave notice that inventory and store fixtures would be sold from June 16, 1986 until the auction on June 28, 1986 at 469 Dayton Avenue, Xenia, Ohio.

Mr. Adair's failure to identify his assets relieves the estate from responsibility for damages in the sale of store fixtures. Accepting David Adair's uncontroverted testimony that he owned the shelving and certain other items, the court holds he is entitled to the proceeds of the sale of the items identified in the testimony. Based upon the testimony of the auctioneer and his employee, David Luken, the trustee should pay from the sale proceeds the sum of $86.00 for the following items:

| | |
|---|---|
| Pegboard | $25.00 |
| Pegboard hooks | 15.00 |
| Display racks | 4.00 |
| Brackets for pegboard | 16.00 |
| Pegboard Shelves | 20.00 |
| Shelves on wall | 6.00 |

The other free standing racks and fixtures are clearly trade fixtures which were property of the estate.

In the distribution the trustee will be guided by 11 U.S.C. § 726(b) which provides:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), [or (6) ] (6) or (7) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208 or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

Under the mandate of 11 U.S.C. § 726(b) the administration expenses of the chapter 7 case have priority over the administrative expenses of the chapter 11 case.

It is, therefore, ORDERED that the Adairs file separate proofs of claim for the periods of debtor's and trustee's use of their storeroom, which shall be treated separately as administrative claims, that the Adairs are estopped from claiming damages for the loss of store fixtures, and that they be reimbursed $80.00 from the sale proceeds of store fixtures sold.