**In re GRIMM & ROTHWELL, INC. aka Morris Sheet Metal, Debtor.**

**Bankruptcy Nos. 2–88–04234, 31–1219074.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 6, 1989.

Donald P. Love, Columbus, Ohio, for debtor.

Richard C. Graham, Eisnaugle, Gleaves & Graham Co., L.P.A., Columbus, Ohio, for Richard A. Perry, Sr.

Leonard S. Sigall, Reynoldsburg, Ohio, for Sheet Metal Worker Trust Funds.

Sara J. Daneman, Columbus, Ohio, trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is presently before the Court on the Application for Allowance of Administrative Expenses ("Application") filed by Richard A. Perry, Sr. ("Perry"), owner of the premises previously occupied by Grimm & Rothwell, Inc., the Chapter 7 debtor in this bankruptcy case ("Debtor"). The Ap-

plication seeks allowance and payment of a claim for postpetition rents under an alleged lease agreement entered into by Perry, as lessor, and the Court-appointed Chapter 7 trustee ("Trustee"), Sara J. Daneman, as lessee. Memoranda in opposition to the Application have been filed by the Trustee, the Sheet Metal Workers Local 98 Pension Fund, Sheet Metal Workers Local 98 Welfare Fund, and the Sheet Metal Workers Local 24 JATC ("Sheet Metal Workers"). A hearing was held November 21, 1989, after which the Court took the matter under advisement.

The Court has jurisdiction in this matter in accordance with 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## II. *Findings of Fact*

1. The Debtor filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code on August 23, 1988. The Debtor was in the business of sheet-metal fabrication and installation.

2. Perry is the owner of the property known as 249 Fornoff Road, Columbus, Ohio, which is subject to the instant dispute. The premises contain approximately 25,000 square feet. On February 26, 1988, Perry and the Debtor entered into a lease agreement pursuant to which Debtor agreed to lease 10,000–12,000 square feet of warehouse and office space from Perry at the afore-described premises. The lease provided that the Debtor was obligated to pay Perry the sum of $41,400.00, payable in equal consecutive monthly installments of $3,450.00, on or before the tenth day of each month. However, after execution of the lease, Perry agreed to accept monthly lease payments of $2,500.00. It is unclear whether the total lease obligation was likewise reduced.

3. The premises, which apparently consist primarily of a large warehouse building, were shared by Debtor and Perry's business. Perry's business used one side of the warehouse and Debtor used the other. However, Perry and Debtor had separate office space. (The portion of the premises leased by Debtor pursuant to the February 1988 lease agreement shall hereinafter be referred to as the "Leased Premises.")

4. On an unspecified date in August of 1988, the Debtor terminated its business operations. Although the Debtor's business had terminated, its inventory, machinery and equipment (the "Personal Property") remained on the Leased Premises for approximately two months after the petition was filed.

5. On September 8, 1988, the Trustee met with Perry's son, Kenneth Perry, on the Leased Premises. At that time, Kenneth Perry and the Trustee discussed the prepetition rents owing under the February 1988 lease. Additionally, the Trustee inquired into the possibility of renting the Leased Premises for a short period as storage for the Debtor's Personal Property until she could conduct an auction sale. A monthly rental figure of $2,500.00 was mentioned, and Perry said he would speak with his father and get back with the Trustee. The Trustee says she never heard back from the Perrys and that, therefore, no agreement was ever entered. The Trustee concedes, and Perry does not dispute, the fact that the Trustee used approximately 20 percent of the Leased Premises following filing of the petition. Apparently, the Trustee only needed limited space to store the Debtor's Personal Property and to prepare it for sale.

6. Despite conflicting testimony, no agreement was reached, in this Court's opinion, for the postpetition leasing of the Leased Premises. Nonetheless, the Trustee, at some time after September 8, 1988, moved all of Debtor's Personal Property located in the office space to an area in the warehouse.

7. Pursuant to the Trustee's stated concern about the security of the Debtor's Personal Property, Perry employed a locksmith to change the locks on the Leased Premises. Two keys were made to open the new locks. Kenneth Perry kept one key in his office desk drawer and mailed the second key to the Trustee. The Trustee never received the second key and its whereabouts are unknown. The Trustee

was permanently locked out of her office space during this period by her colleagues and it is possible that the letter containing the key was never forwarded to her by her former colleagues.

8. The Trustee scheduled an auction for October 19, 1988. Butch Selvage ("Selvage"), the Court-appointed auctioneer, was employed by the Trustee to conduct the auction. Notice of the auction, as well as the items to be sold, was advertised in the local newspapers.

9. On October 18, 1988, one day prior to the scheduled auction, a theft occurred on the Leased Premises. Several items of the Debtor's Personal Property were stolen. No charges have been brought against any person or persons; however, the Trustee has spoken with the Federal Bureau of Investigation about the theft.

10. The auction occurred on the date as scheduled, even though several items were missing due to the theft.

11. Perry, as owner of the premises, was under no obligation to secure and/or insure the Debtor's Personal Property against possible theft.

12. Perry filed a proof of claim with respect to the prepetition rents owed.

### III. *Arguments of the Parties*

Perry initially asserted that the reasonable rental value of the Leased Premises is $3,450.00 per month. However, at hearing his counsel revised this amount to $2,500.00, as this was the amount of rent actually charged the Debtor under the lease. Because the Trustee occupied the property for two months, Perry requests a court order allowing an administrative expense in the amount of $5,000.00.

In response, the Sheet Metal Workers posit that the requested rents are excessive and unreasonable in light of the fact that only 20% of the Leased Premises was used to store the Debtor's Personal Property pending the auction. The Trustee, in her opposing memorandum, concedes that the Debtor's Personal Property was stored in the Leased Premises. However, the Trustee alleges that no agreements arose from the discussions concerning the use of the premises or the payment of an administrative expense. Due to Perry's negligence in securing and insuring the premises, the Trustee argues, items of the Debtor's Personal Property, valued at approximately $5,500.00, were stolen from the premises the day before the scheduled auction. The Trustee requests that the Court deny the motion entirely and disallow the claim for an administrative expense or, in the alternative, that the Court set off the amount of the loss resulting from Perry's alleged negligence against any rents that may be owing.

### IV. *Legal Discussion*

█ In general, claims for postpetition rents, if allowble against the bankruptcy estate, are governed by the provisions of 11 U.S.C. § 503. This section states, in pertinent part:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

Priority statutes, such as § 503, are to be strictly construed. *In re 1 Potato 2, Inc.,* 71 B.R. 615, 618 (Bankr.D.Minn.1987) (citing *Standard Oil Comp. v. Kurtz,* 330 F.2d 178, 180 (8th Cir.1964). The applicant must prove by a preponderance of the evidence entitlement to the administrative expense. *In re 1 Potato 2, Inc.,* 71 B.R. at 618 (citing *Matter of Patch Graphics,* 58 B.R. 743, 746 (Bankr.W.D.Wisc.1986)).

█ As is evident from the above-cited provision, a landlord is entitled to an administrative claim for postpetition rent for leased premises if the claim constitutes "the actual, necessary cost and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A). Further, several courts, which have permitted landlords to acquire an administrative priority for postpetition rent, have not required court approval prior to the expense being incurred. *See, e.g.*

*Matter of Hearth & Hinge, Inc.,* 28 B.R. 595, 597 (Bankr.S.D.Ohio 1983); *In re Kors, Inc.,* 13 B.R. 683, 684–85 (Bankr.D. Vt.1981); *In re Jarvis Kitchenware of D.C., Inc.,* 13 B.R. 230, 231 (Bankr.D.C. 1981); *Matter of Ruby's Fla., Inc.,* 11 B.R. 171, 175 (Bankr.M.D.Fla.1981). However, court approval of the nature, as well as the amount, of the claim is compulsory.

■ The Debtor's Personal Property was property of the estate from the filing of the petition, August 23, 1988, until its sale on October 19, 1988. During this period, the Trustee had dominion and control over these assets. Although the controverted evidence submitted at trial did not meet the quantum of proof necessary to establish the existence of a rental agreement, the Trustee's use of the warehouse as storage space was necessary and preserved the assets of the estate until such assets were eventually sold at auction. For such valuable services, an allowance for rent is equitable under the circumstances to the extent of the actual amount of space used as storage. *See In re The Hopkins Corp.,* 76 B.R. 612, 614 (Bankr.S.D.Ohio 1987). Clearly, the Trustee has benefitted from use of the Leased Premises, which was operated to preserve the estate. This benefit is measured by the value of the storage. *Id.*

■ The actual and necessary cost of preserving the estate is the fair rental rate prorated for the period the Leased Premises were used by the Trustee. *Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr.S.D.Cal.1980); *In re Tucci,* 47 B.R. 328 (Bankr.E.D.Vir.1985). Substantial authority supports the proposition that, absent evidence to the contrary, the fair rental rate is the contract rental rate rather than a rental value determined by the specific use of the premises. *Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 102–03, 10 S.Ct. 950, 954–55, 34 L.Ed. 379 (1890); *In re Royal Internat'l. Corp.,* 30 B.R. 750, 752 (Bankr.W.D.Ky.1983); *Matter of Fred Sanders Co.,* 22 B.R. 902, 906–07 (Bankr.E.D.Mich.1982). Essentially,

this Court, in adopting this reasoning, is required to look to the amount specified in the rental contract in determining the amount of rent now due to Perry. Although the Trustee merely used the premises as storage and conducted no business, this factor is inconsequential in the Court's assessment of the rental value of the property.

■ While the actual use of property is irrelevant, the amount of space occupied by the Trustee is vital. The uncontested evidence presented to the Court demonstrated that approximately 20% of the overall Leased Premises was used for storage by the Trustee. This being the case, the Court finds that $500.00, or 20% of $2,500.00, is owed, per month, to Perry.

■ As a final matter, the Trustee's oral request to set off the rent owed against dollar value of the property stolen is not well-taken. Neither Perry, nor anyone under his employment, has been charged with the theft of the Debtor's equipment. Mere accusations and suspicions do not justify such action by this Court.

Based upon the foregoing rationale, Perry is entitled to the sum of $500.00 per month for two months as an administrative expense pursuant to § 503(b)(1)(A) of the Bankruptcy Code, or a total of $1,000.00. However, payment of such administrative expense shall be delayed until the close of the case when it is determined that sufficient funds exist to pay Perry.

IT IS SO ORDERED.