**In the Matter of KYLE TRUCKING, INC., Debtors.**

**Bankruptcy No. 97–40841.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

June 14, 1999.

David Rosenthal, Lafayette, IN, for Debtor.

Peter Velde, Indianapolis, IN, for Creditor.

## *DECISION*

ROBERT E. GRANT, Bankruptcy Judge.

The debtor, Kyle Trucking, Inc., filed a voluntary petition for relief under Chapter 11 on September 15, 1997. As of that date, it was in possession of vehicles leased from Associates Leasing, Inc. ("Associates"). Despite the facial tenor of the contract, Debtor contended that its agreement with Associates was not a true lease but was, instead, a disguised financing device. As a result, it did not make any post-petition payments to Associates, *see* 11 U.S.C. § 365(d)(10), until after Associates had filed a motion for relief from stay. That motion resulted in an agreed order which provided for a partial payment of the rent otherwise due Associates, with the balance being placed in escrow pending the court's ruling concerning the nature of the agreement between them. *See In re Elder–Beerman Stores, Corp.*, 201 B.R. 759, 764–65 (Bankr.S.D.Ohio 1996). The court resolved the lease/financing device question in Associate's favor and required the debtor to either assume or reject the leases. When it failed to do so, the leases were deemed rejected on January 13, 1999.

The funds placed in escrow have been paid over to Associates. Those funds, however, represent only the difference between the monthly rent due it and the monthly adequate protection payments it received from the debtor. They do not include any part of the lease payments which came due before March 1998 or other payments called for by the leases, such as taxes, late fees, attorney fees and costs. In an effort to recover these sums, Associates has filed a motion for an administrative claim, seeking $55,565.84. The issues raised by that motion have been submitted to the court for a decision based on stipulations of fact and the briefs of counsel.

Associates' motion is based upon 11 U.S.C. § 365(d)(10) which provides that "[t]he trustee shall timely perform all of the obligations of the debtor ... first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected...." Associates argues, however, that it is entitled to an administrative claim for *all* post-petition lease payments, taxes, late fees and attorney fees, regardless of whether a particular obligation arose before or after the 60 day period specified in § 365(d)(10).

The debtor initially contends that Associates is not entitled to any administrative claim because, in a motion for relief from stay filed on November 10, 1997, it previously asserted that the lease terminated pre-petition. The debtor is apparently suggesting that this assertion somehow ju-

dicially estops Associates from seeking an administrative claim for debtor's post-petition obligations.

 Judicial estoppel prevents a party from taking one position in litigating a particular set of facts and then later reversing that position in subsequent litigation when it is in their interest to do so. *Levinson v. United States*, 969 F.2d 260 (7th Cir.1992); *In re Cassidy*, 892 F.2d 637 (7th Cir.1990). While no definitive test exists for determining when the doctrine applies, certain boundaries have been established. One of them is that the party must have persuaded the first court to accept its position. *Levinson*, 969 F.2d at 264–65; *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895) ("Where a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position,* he may not thereafter, simply because his interests have changed, assume a contrary position.") (emphasis added). In this case, Associates never succeeded in maintaining its position that the lease had terminated; in fact, the issue was never addressed by the court. Therefore, Associates is not judicially estopped from seeking an administrative claim.

 While the Seventh Circuit has not interpreted § 365(d)(10), its decision with respect to a very similar provision of the Bankruptcy Code, § 365(d)(3), is instructive. That provision addresses a debtor's post-petition obligations to lessors of non-residential real estate, pending assumption or rejection of those executory contracts, in much the same way that § 365(d)(10) does for the lessors of personal property. In *Matter of Handy Andy Home Imp. Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998), the Seventh Circuit observed that § 365(d)(3) allows landlords to collect the rent fixed in the lease during the post-petition/pre-rejection period. *Id.* at 1128. It also concluded that which post-petition obligations a debtor is required to perform

is determined by the date liability accrues, rather than the date a bill is issued or the date upon which payment is due. *Id.* at 1127–28. As this court observed when it was called upon to apply the statute:

[a] convenient way of conceptualizing the issue is to ask whether, as of the date of the petition, debtor's liability to pay a particular obligation had already attached so that, if the lease had ended on that date, the obligation in question would have been a claim against the debtor. If so, § 365(d)(3) does not require it to be performed. If, however, the obligation would not represent a claim had the lease terminated on the date of the petition, § 365(d)(3) requires performance until the lease is assumed or rejected. *Matter of Consolidated Industries Corp.*, 234 B.R. 84, 86–87 (Bankr.N.D.Ind.1999).

The same reasoning applies to § 365(d)(10). Like § 365(d)(3), it requires the timely post-petition performance of certain obligations of the debtor. The only meaningful difference between them is that for real property the time for performance begins after the order for relief, while for personal property it begins sixty days later.

Section 365(d)(10) clearly required the debtor to pay the contractually agreed upon rent which came due after 60 days following the order for relief. To the extent it failed to do so, Associates is entitled to an administrative claim.[1] Yet, Associates contends that it is also entitled to an administrative claim for the rent which came due *during* those first 60 days. This argument is contrary to the plain language § 365(d)(10), which specifies that the obligations to be performed are those which "arise from or after 60 days *after* the order for relief." 11 U.S.C. § 365(d)(10) (emphasis added). If Congress had intended to give priority to obligations arising during the first 60 days, it would not have limited

---

1. Debtor failed to pay the rent due in the months of December 1997, January and February 1998. At the rate of $6,411.12 a month, the unpaid rent totals $19,233.36.

§ 365(d)(10) to the obligations arising after that time. *Compare* 11 U.S.C. § 365(d)(3) *with* 11 U.S.C. § 365(d)(10).

When it enacted § 365(d)(10), Congress was confronted with divergent views on the issue of a debtor's post-petition obligations to a lessor of personal property. One extreme required no post-petition payments, unless and until the lease was assumed. *See, e.g., In re Mid–Region Petroleum, Inc.,* 1990 WL 506896 (N.D.Okla. 1990), *aff'd,* 1 F.3d 1130 (10th Cir.1993). The other required full payment from the date of the order for relief, until the lease was assumed or rejected. *See, e.g., In re Fred Sanders,* 22 B.R. 902 (Bankr. E.D.Mich.1982). In the middle was yet another view, which would allow the lessor an administrative claim based upon varying standards. *See, e.g., In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986) (actual benefit to the estate required); *In re ICS Cybernetics Inc.,* 111 B.R. 32 (Bankr.N.D.N.Y.1989) (fair rental value of property actually used by debtor after date of petition); *In re Litho Specialties, Inc.,* 154 B.R. 733 (D.Minn.1993) (no consideration of actual use). Congress obviously balanced and compromised these competing positions in crafting a statutory solution to the judicial debate. To allow an administrative claim for the rent coming due during the first 60 days following the order for relief would undermine that solution. Where a lease of personal property is assumed, any default in the obligations which were to be performed during the first 60 days following the petition will have to be satisfactorily cured in connection with the assumption. *See* 11 U.S.C. § 365(b). Where, as in this case, an unexpired lease of personal property is ultimately rejected, the obligations coming due during the 60 days following the order for relief will be included in the lessor's claim for damages arising from the rejection of the lease. Those obligations do not represent an administrative claim.

In addition to the lease payments, Associates is also seeking an administrative priority for other obligations included in the lease, such as late fees on the lease payments, taxes, and attorney fees.

■ The lease between debtor and Associates provides for a late fee, at a rate of 1.5% per month, on any delinquent rental payments. The debtor was undeniably late in making post-petition rental payments and Associates is entitled to late fees on the delinquency. Associates is not, however, as it contends, entitled to late charges for the entire post-petition/pre-rejection period. Because § 365(d)(10) only requires performance of the obligations coming due after 60 days following the order for relief, Associates is not entitled to late fees arising from the debtor's failure to make the rental payments during those first 60 days. Neither is Associates entitled to late fees on the payments made under the parties' agreed entry for adequate protection, which the court approved on February 23, 1998. Pursuant to that entry, the debtor made monthly payments of $1,800 directly to Associates and deposited the remaining portion of the lease payment, $4,611.12, into a bank account where it was held until the court resolved the dispute between them regarding whether the lease was a true lease or disguised security agreement. Associates is now seeking an administrative claim for late charges on the $4,611.12 deposited into the escrow account each month. The agreed entry contained no provision for late fees on the money deposited into the escrow account and the court will not read such a provision into it. Furthermore, Associates was in constructive receipt of the entire lease payment each month and so those payments should not be considered to have been late. Nonetheless, Associates is entitled to late fees on account of the unpaid rentals which came due after 60 days following the order for relief until the debtor began making the adequate protection payments in accordance with

the agreed entry.[2]

█ The lease also required the debtor to pay all taxes "levied, assessed or incurred during the entire term of this Lease...." Based upon this provision, Associates is seeking $5,784.32 in taxes as part of its administrative claim. As previously noted, *see* p. 3, the Seventh Circuit follows an accrual approach to determining when a particular obligation arises for the purposes of both § 365(d)(3) and § 365(d)(10). This approach focuses on when the obligation to pay arose, rather than when it was billed or when payment was due. Consequently, Associates is entitled to an administrative claim for the taxes in question only to the extent the debtor's responsibility to pay accrued after 60 days following the order for relief and before the leases were rejected. The stipulations indicate that the taxes in question were billed to the debtor's account during the post-petition/pre-rejection period. They do not, however, reflect when the debtor's underlying responsibility to pay those taxes accrued; we know only when they were billed. Since the stipulated facts do not allow the court to determine when liability for a particular tax bill actually accrued, Associates has failed to prove that these taxes constitute an administrative claim.

█ The final component of Associates' administrative claim is the attorney fees and costs it incurred in connection with debtor's bankruptcy. There is currently a split of authority on the question of whether § 365(d)(3) and, thus, by analogy § 365(d)(10), will allow a debtor's lessor to recover the attorney fees it incurs in connection with the bankruptcy during the post-petition/pre-rejection period, when the lease is ultimately rejected.[3] *Com-*

*pare, In re Pudgie's Dev. of N.Y., Inc.,* 202 B.R. 832, 837 (Bankr.S.D.N.Y.1996); *In re Pacific Arts Publishing, Inc.,* 198 B.R. 319 (Bankr.C.D.Cal.1996); *In re Gantos,* 181 B.R. 903 (Bankr.W.D.Mich.1995) (§ 365(d)(3) does not allow lessor to recover attorney fees) *with, In re Exchange Resources, Inc.,* 214 B.R. 366 (Bankr. D.Minn.1997); *In re MS Freight Distribution, Inc.,* 172 B.R. 976 (Bankr.W.D.Wash. 1994); *In re Pacific Sea Farms, Inc.,* 134 B.R. 11 (Bankr.D.Hawaii 1991) (§ 365(d)(3) allows lessor to recover attorney fees). The court need not chose sides in this debate at the present time. Even if it would determine that § 365(d)(10) allows the lessor of personal property to recover its post-petition/pre-rejection attorney fees, the lessor still has the burden of proving the reasonable amount of those fees. This requires information concerning the nature of counsel's services, the time devoted to the matter and counsel's hourly rate; the same type of information that one expects in connection with any request for attorney fees. *See e.g., Matter of Hunt's Health Care, Inc.,* 161 B.R. 971, 980 (Bankr.N.D.Ind.1993). Associates has failed to provide this information. The underlying information which would substantiate any attorney fees is not contained in the parties' stipulations of fact. They reflect only that fees have been incurred. Accordingly, even if Associates would be entitled to recover its attorney fees, it has failed to carry its burden of proving the amount of those fees and its claim to them should be denied.

Associates is entitled to an administrative claim for the unpaid monthly rent which came due after 60 day days following the order for relief, in the amount of $19,233.36, plus the late fees, in the

---

**2.** 1.5% of the monthly rental of $6,411.12 is $96.17. There were thirteen months between the date the December 1997 payment was due and the date of rejection; twelve months for the January 1998 payment; and eleven months for the February 1998 payment. Accordingly, Associates is entitled to late fees totaling $3,462.12 as follows:

$$96.17 \times (13 + 12 + 11) = \$3,462.12$$

**3.** If the lease is assumed, any attorneys fees due the lessor will be paid in connection with the cure required for assumption. *See,* 11 U.S.C. § 365(b).

amount of $3,462.00, on account of those payments, for a total administrative claim in the sum of $22,695.36. It is not entitled to an administrative claim for the remaining rent, late charges, taxes, and attorney fees sought by its motion. An appropriate order will be entered.