In re PAN AMERICAN AIRWAYS CORP. Pan Am Liquidating Corp., f/k/a Padre, Inc., Debtors.

**Bankruptcy No. 98–11618–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

March 8, 2000.

David L. Rosendorf, Kozyak Tropin & Throckmorton, P.A., Miami, FL, for Pan Am Liquidating Corp.

Paul Joseph McMahon, Miami, FL, for AT & T Credit Corp.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

The matter came before the Court on the Motion of AT & T Credit Corporation ("AT & T") for Summary Judgment and the Response of Pan Am Liquidating Corp. ("PALC") thereto.

On February 26, 1998, Pan American Airways Corp. and Pan American World Airways, Inc. (collectively "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Pursuant to the confirmed Plan, PALC now serves as Liquidating Debtor of the consolidated estates of the Debtors and several other related entities which subsequently filed voluntary Chapter 11 petitions.

AT & T was a lessor of two telephone systems to the Debtors, pursuant to a Master Lease Agreement ("Lease Agreement") entered into in 1996 by Debtors' predecessor, Carnival Airlines, Inc., and AT & T. The equipment subject to the Lease Agreement was sold by Lucent Technologies, Inc. ("Lucent"), a unit of AT & T Corp., and then leased by AT & T to the Debtors.

On April 23, 1998, Debtors sent a letter to Lucent notifying Lucent of Debtors' immediate rejection of the Lease Agreement.[1]

On April 27, 1998, AT & T filed a motion to compel Debtors to assume or reject the Lease Agreement.

On May 28, 1998, the Court held a hearing and, on June 8, 1998, entered an Order authorizing Debtors' rejection of the Lease Agreement "effective as of June 2, 1998."

---

1. As indicated previously, Lucent was the manufacturer of the phone system, not the lessor. No such notice of rejection was given to AT & T, the lessor. AT & T thereafter placed several phone calls to the Debtors, and AT & T was told that a decision had not yet been made whether to accept or reject the Lease Agreement. In fact, a hearing was held on May 28, 1998, and at that time Debtors continued to request, and were granted, additional time to decide whether to accept or reject the Lease Agreement. Accordingly, Debtors' letter to Lucent rejecting the Lease Agreement and Debtors' subsequent equivocation when asked to accept or reject the Lease Agreement support this Court's finding that no effective rejection occurred until June 2, 1998, the date of rejection as set forth in the Order of this Court dated June 8, 1998.

On June 19, 1998, AT & T filed its motion to approve payment of its administrative expense claim for the post-petition lease payments due under the Lease Agreement.

On September 17, 1999, AT & T filed its motion for summary judgment contending that AT & T is entitled to receive full payment under the Lease Agreement for the period between the petition date and the June 2, 1999, rejection date. AT & T cites 11 U.S.C. § 365(d)(10) as authority for its position. PALC subsequently filed a response which disputes AT & T's interpretation of § 365(d)(10).

11 U.S.C. § 365(d)(10) states in part as follows:

> The trustee shall timely perform all of the obligations of the debtor... first arising from and after 60 days after the order for relief in a case under Chapter 11 of this title under an expired lease of personal property ... until such lease is assumed or rejected notwithstanding Section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof....

AT & T argues that, under § 365(d)(10), a debtor must accept or reject a lease within 60 days after the petition date and, if debtor fails to do so, all of debtor's obligations under the lease from the petition date until the rejection must be timely performed. AT & T contends that § 365(d)(10) was enacted to provide an incentive for a debtor to accept or reject a lease within 60 days after the petition date, and to punish a debtor for failing to so act. Because Debtors failed to accept or reject the Lease Agreement within 60 days of the petition date, AT & T asserts that it is entitled to full payment under the Lease Agreement for the period from the petition date to June 2, 1998, the rejection date.

PALC counters that § 365(d)(10) does not provide authority for such an award where there is no evidence that the leased equipment provided any post-petition benefit to the estate. At best, asserts PALC, § 365(d)(10) provides for a presumptive entitlement to rents first due 60 days after the petition date without a showing of actual use and benefit. PALC further asserts that § 365(d)(10) does not alter the fact that rents due during the first 60 days of the case are entitled to administrative priority only where the lessor can satisfy the requirements of 11 U.S.C. § 503(b)(1)(A), i.e. that such rents represent the "actual, necessary costs and expenses of preserving the estate."

 All statutory interpretation begins with the language of the statute itself, and where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) *quoting Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

 Counsel for AT & T concedes that the language "from or after" may appear to be plain, but that a different interpretation is possible (and more equitable) based upon the legislative history and case law addressing § 365(d)(10). The Court disagrees. The plain language of § 365(d)(10) refers explicitly to obligations "first arising from or after 60 days after the order for relief". It is clear to this Court that the obligations referenced in § 365(d)(10) do not include those which would have arisen within the first 60 days after the order for relief whether or not the debtor fails to accept or reject a lease within the first 60 days after the order for relief. The legislative history supports this conclusion:

> Sixty days after the order for relief, the debtor will have to perform all obligations under the equipment lease, unless the court holds a hearing and determines otherwise, with the burden on the debtor. The word "first" as used in the section refers to the payments and the performance of all other obligations that initially become due more than 60 days

after the order for relief. The purpose of that reference is to make clear the intent that the provision does not affect payments originally due prior to 60 days before (sic) the order of relief.

140 Cong. Rec. S14462 (Oct. 6, 1994) (statement of Sen Grassley).

Both parties cite the case of *In re Elder–Beerman Stores Corp.*, 201 B.R. 759 (Bankr.S.D.Ohio 1996) in support of their respective positions. While counsel for AT & T argued vigorously that the language in *Elder–Beerman* supports his reading of § 365(d)(10), the case certainly did not hold that § 365(d)(10) creates an automatic entitlement to rents that come due before the 60th day after the order of relief. That issue was not squarely addressed, and the court's opinion in *Elder–Beerman*, though subject to interpretation, seems to suggest that no such obligations arise as to the first 60 days following the order for relief. Further, based upon the Court's own research, there are no published opinions which hold that § 365(d)(10) requires the performance of lease obligations pertaining to the first 60 days after the order for relief whether the debtor has or has not given notice to assume or reject within 60 days after entry of the order for relief. In fact, the case which the Court found which most squarely addressed the issue held that § 365(d)(10) does not apply to the first 60 days after the order for relief. *See In re Kyle Trucking, Inc.*, 239 B.R. 198, 201–02 (Bankr.N.D.Ind.1999) ("If Congress had intended to give priority to obligations arising during the first 60 days, it would not have limited § 365(d)(1) to the obligations arising after that time.")

■ Accordingly, based upon the plain meaning of § 365(d)(10), the legislative history, and the relevant case law on the subject, the Court finds that PALC is obligated to AT & T for full payment under the Lease Agreement only for a period between 60 days after the order for relief and June 2, 1998. However, § 365(d)(10) makes it clear that the Court can order otherwise "after notice and a hearing and based on the equities of the case." PALC correctly asserts that such an equitable determination cannot be made on summary judgment. In addition, AT & T is entitled to an administrative claim for rents due during the first 60 days of the case where AT & T can satisfy the requirements of § 503(b)(1)(A) that such rents represent the "actual, necessary costs and expenses of preserving the estate." This determination also will require an evidentiary hearing. The parties are directed to file any substantive motions relating to these issues within 30 days; thereafter, an evidentiary hearing will be scheduled and notice will issue.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.