### In re FURLEY'S TRANSPORT, INC., Debtor.

Zvi Guttman, Chapter 7 Trustee, Plaintiff,

v.

Xtra Lease, Inc., Defendant.

**Bankruptcy No. 98–6–6900–SD.**

**Adversary No. 00–5614–SD.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

June 13, 2001.

734

Leonard Kohlenstein, Baltimore, MD, for debtor.

Zvi Guttman, The Law Offices of Zvi Guttman, P.A., Baltimore, MD, trustee/plaintiff.

Glen H. Tschirgi, Secured Legal Services Group, Columbia, MD, for defendant.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

E. STEPHEN DERBY, Bankruptcy Judge.

### I. *Issues Presented*

In this Chapter 7 case that was converted from Chapter 11, two issues are raised by the Trustee's motion for partial summary judgment. First, when does a personal property lease payment obligation first arise for purposes of 11 U.S.C. § 365(d)(10)? Second, does Section 365(d)(10) bar, as a matter of law, a personal property lessor from recovering rental charges first arising under its lease during the 59 day period following the petition date as a Chapter 11 administrative expense under Section 503(b)(1)(A)?

Section 365(d)(10) provides:

(10) *The trustee shall timely perform all of the obligations of the debtor,* except those specified in section 365(b)(2), *first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property* (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of

the lessor's rights under such lease or under this title.

11 U.S.C. § 365(a)(10) (emphasis added). This section was added by the Bankruptcy Reform Act of 1994. Pub.L. No. 103-394, 108 Stat. 4106 (1994).

For reasons stated below, the court concludes that under § 365(d)(10), lease obligations to pay a periodic rental charge for personal property first arise on the due date, and not on an earlier invoice date. Further, Section 365(d)(10) does not bar a personal property lessor, such as Defendant, from recovering as an administrative expense lease rental charges arising during the first 59 days of a Chapter 11 case where the rental charges are shown to constitute "actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A). Consequently, the Chapter 7 Trustee's motion for partial summary judgment will be denied because there is a genuine issue of material fact to be resolved, namely, whether the rental charges under Defendant's personal property leases were actual, necessary costs or expenses of preserving the estate.

### II. *Background Facts and Pleadings*

On December 2, 1998 (the "Petition Date") the Debtor, Furley's Transport, Inc. ("Furley's"), filed a voluntary petition for reorganization under Chapter 11. The case was converted to one under Chapter 7 on March 15, 1999, and Zvi Guttman, the Plaintiff, was appointed as Chapter 7 Trustee. Xtra Lease, Inc. ("Xtra Lease") has moved for allowance of $33,569.28 as a Chapter 11 administrative expense for use of seven trailers during the period from December 2, 1998 through February, 1999. The instant motion requests a partial summary judgment on the narrow issue of whether § 365(d)(10) precludes Xtra Lease from recovering a Chapter 11 administrative expense pursuant to 11 U.S.C.

§ 503(b)(1). Xtra Lease's response to the Trustee's motion raises a related legal issue, namely, when did Xtra Lease's asserted claim first arise under 11 U.S.C. § 365(d)(10)?

Xtra Lease is an over-the-road trailer rental and leasing company. Furley's conducted an over-the-road long haul trucking business. It owned, leased and operated over thirty refrigerated tractor trailer units and a multi-bay on-site truck repair facility. On July 30, 1997 Furley's and Xtra Lease entered into an Equipment Lease Agreement ("Lease Agreement"). On the Petition Date, Furley's possessed seven of Xtra Lease's refrigerated trailers pursuant to the Lease Agreement. According to Xtra Lease, Furley's retained possession of the leased vehicles after filing its petition, and it continued to use Xtra Lease's trailers in the ordinary course of its business from December 2, 1998 through March 3, 1999, at the earliest, and in the case of at least some trailers, through March 8, 1999 when Furley's surrendered the trailers to Xtra Lease pursuant to a Consent Order Terminating the Automatic Stay entered on March 8, 1999.[1] Under the Lease Agreement, Furley's was obligated to pay for each trailer leased (1) a monthly rental fee, (2) a monthly fee based upon excess use of the refrigeration equipment, (3) a fee for brake and tire wear and tear, and (4) the actual costs for repairs beyond reasonable wear and tear. The Trustee admits neither he nor Furley's made any post-petition payments to Xtra Lease.

On September 7, 1999 Xtra Lease filed its Motion for Allowance of Chapter 11 Administrative Expense pursuant to 11 U.S.C. § 503 and Local Bankruptcy Rule 2070–1. In this motion, Xtra Lease asserted it was entitled to an administrative expense under 11 U.S.C. § 503 for rental charges for the trailers used by Furley's from the Petition Date (December 2, 1998) through the end of February, 1999. According to Xtra Lease, the rental fees for this period were $19,397.69. In addition, Xtra Lease asserted it was owed $1,824.24 for wear on the trailer's tires and brakes, $8,101.79 for excess use of the refrigeration units on the trailers, and $4,245.56 for repairs beyond ordinary wear and tear. The Trustee opposed the motion, contending, *inter alia*, that the Lease Agreement was in fact a secured transaction, and not a true lease, under Maryland's Uniform Commercial Code and that Xtra Lease must prove benefit to the estate.

On March 22, 2000 the Trustee initiated this adversary proceeding by filing a complaint to avoid and recover $29,436.43 as preferential transfers under 11 U.S.C. § 547(b). The Trustee also objected under § 502(d) to payment of any otherwise valid and enforceable claim of Xtra Lease. As one of its affirmative defenses, Xtra Lease claims it is entitled to a set-off. On April 17, 2000 the court granted the Trustee's motion to consolidate Xtra Lease's Motion for Allowance of a Chapter 11 Administrative Claim with this adversary proceeding because the two matters involved similar facts and issues. That is, if the court allows Xtra Lease's administrative expense claim, it could offset some or all of the alleged preferential transfers from Furley's to Xtra Lease.

---

1. The Plaintiff asserts the trailers were surrendered on February 22, 1999, while the Defendant contends the trailers were returned sometime between March 3, 1999 and March 8, 1999. Although this is a genuine dispute of fact, it is not a genuine dispute of *material* fact under Fed.R.Civ.P. 56 because the date the trailers were surrendered does not affect the outcome of Plaintiff's motion. Therefore, the dispute does not prevent the court from ruling on the Trustee's motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. *Summary Judgment Standard*

The standard of review for summary judgment is set forth in *Ramsey v. Bernstein (In re Bernstein)*, 197 B.R. 475 (Bankr.D.Md.1996) *aff'd* 113 F.3d 1231 (4th Cir.1997):

> Pursuant to Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed.R.Civ.P. 56(e), made applicable by Bankr.Rule 7056. When a motion for summary judgment is made and supported by affidavits or other evidence, "an adverse party may not rest upon mere allegations or denials..." *Id.* While the court must construe all inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513–14, the court is bound by factual determinations made in prior actions where collateral estoppel applies. *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308, (1980).

197 B.R. at 477.

### IV. *Discussion*

The Trustee urges that Xtra Lease's claim for administrative expenses should be denied outright because Section 365(d)(10) excused the debtor-in-possession's failure to pay rent during the first fifty-nine days of the case, and Xtra Lease's claim first arose during this period. At most, the Trustee contends, Xtra Lease is entitled to a general unsecured claim for damages upon rejection of the lease pursuant to 11 U.S.C. § 365(g).[2] The Trustee's argument proceeds as follows: Rent arose on the date Xtra Lease invoiced the Debtor. Xtra Lease invoiced the Debtor for December rent pre-petition on November 25, 1998. Invoices for January and February, 1999 rent were issued on December 25, 1998 and January 25, 1999, respectively. Since the December rent arose pre-petition and the January and February rent arose during the first sixty days of the case, Section 365(d)(10) excused the debtor-in-possession's failure to make lease payments and precludes Xtra Lease's administrative expense claim.

The Trustee's interpretation and analysis of Section 365(d)(10) contains at least two flaws. First, he misconstrues when Xtra Lease's payments arose under the Lease Agreement for purposes of Section 365(d)(10). Second, he reads powers into the statute that do not exist. The court will consider each of these issues and will discuss their ultimate impact on Xtra Lease's claims in turn.

#### A. *Xtra Lease is entitled to an automatic claim pursuant to 11 U.S.C. 365(d)(10) for all obligations under the Lease Agreement that came due from or after 60 days following the order for relief.*

■ Section 365(d)(10) obligates a Chapter 11 debtor-in-possession to per-

---

**2.** 11 U.S.C. § 365(g), in relevant part, provides: "[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease..."

form all obligations under personal property leases "first arising" after the fifty-ninth day following the order for relief until the lease is rejected. The order for relief in Furley's Chapter 11 case was December 2, 1998, the Petition Date. 11 U.S.C. § 301. Furley's rejection of the leases was confirmed in the consent order terminating the automatic stay as to Xtra Lease's trailers that was entered on March 8, 1999. Therefore, under Section 365(d)(10), Furley's was liable to Xtra Lease for all obligations under the lease "first arising from or after" January 31, 1999, which was the sixtieth day following the order for relief. This obligation is independent of Section 503. See In re Russell Cave Co., 247 B.R. 656, 659 (Bankr.E.D.Ky.2000). While this recitation is fairly straightforward, the parties have different opinions about when Furley's monthly obligations first arose under the Lease Agreement. The Lease Agreement provided that Furley's would be invoiced in advance of the monthly rental period, and it permitted payment at any time within ten days from the invoice date.[3] The Trustee argues that Furley's obligations first arose on the invoice date, but Xtra Lease counters that the due date controls.

■ The starting point is the plain language of the statute. Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), quoting Caminetti v. U.S, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). The plain language of Section 365(d)(10) refers to "obligations...first arising from or after 60

days after the order for relief." 11 U.S.C. § 365(d)(10). Arguably, however, this language is ambiguous as to when Furley's obligation to pay February rent first arose. Did Furley's obligation to pay within ten days first arise on the invoice date (January 25, 1999), in which case Section 365(d)(10) excuses Furley's failure to pay, or on the due date (February 4, 1999), in which case Section 365(d)(10) does not excuse Furley's failure to pay because it fell on the sixty-fourth day following the order for relief and is therefore outside the fifty-nine day abeyance period provided by Section 365(d)(10).

■ When statutory language is ambiguous, the court may look to legislative history for guidance. United States, v. Irvin, 2 F.3d 72, 76 (4th Cir.1993), cert. denied, 510 U.S. 1125, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994). Here, the legislative history includes a statement from Senator Grassley that confirms the due date, and not the invoice date, controls. According to Senator Grassley:

> The word "first" as used in the section refers to the payments and the performance of all other obligations that initially become due more than 60 days after the order for relief. The purpose of that reference is to make clear the intent that the provision does not affect payments originally due prior to 60 days before [sic] the order of relief.

140 Cong. Rec. S14462 (daily ed. Oct. 6, 1994) (statement of Sen. Grassley). Although Xtra Lease invoiced the Debtor within the abeyance period on January 25, 1999, the February lease payment was not due for another ten days, or February 4,

3. *D. Payment Terms:* **Lessee** shall be invoiced in advance for all use and other charges hereunder, and shall pay all invoices within ten (10) days from date of invoice. Use charges shall be computed on a pro-rata daily basis for any unit of Equipment which is in **Lessee's** possession or control for any partial billing period, **provided however,** that **Lessee,** upon termination, shall be responsible for and pay to **XTRA LEASE** the use charges for the full billing period during which a unit of Equipment is redelivered to **XTRA LEASE.**

which was beyond the abeyance period. Therefore, under Section 365(d)(10), the February lease payment, and all other lease payments due thereafter until the Lease Agreement was rejected, were automatically entitled to Chapter 11 administrative expense status.

**B.** *11 U.S.C. § 365(d)(10) Does Not Preclude Xtra Lease's Claim for Administrative Expenses Under 11 U.S.C. § 503(b)(1)(A).*

█ The second issue is whether Section 365(d)(10) bars Xtra Lease's Chapter 11 administrative claim under Section 503(b)(1)(A) for obligations Furley's failed to perform under the Lease Agreement during the first fifty-nine days following the Petition Date. The express language of Section 365(d)(10) is silent on the issue, but the Trustee contends it bars Xtra Lease's administrative claim by negative implication. In other words, by expressly directing the Trustee to timely perform all personal property lease obligations first arising from and after 60 days following the order for relief, Section 365(d)(10) precludes a trustee from performing such lease obligations arising prior to the 60th day.

To support his position the Trustee relies on a single case, *In re Kyle Trucking, Inc.*, 239 B.R. 198 (Bankr.N.D.Ind.1999). However, for reasons discussed below, the facts and analysis in *Kyle Trucking* are distinguishable from the facts in this proceeding. Further, the plain language of Section 365(d)(10), legislative history reflecting the intent of Congress in enacting the section, and more recent published opinions interpreting the section demonstrate that the Trustee's position is incorrect.

In *Kyle Trucking,* the debtor possessed vehicles leased from Associates Lending ("Associates") on the petition date, September 15, 1997. *Id.* at 200. After the court found the agreements between debtor and Associates were true leases and were not disguised financing devices, it ruled the leases were deemed rejected as of January 13, 1999. *Id.* Although the debtor had been making adequate protection payments to Associates and had placed additional money in escrow pending the court's ruling, Associates claimed it was still owed for lease payments due during the first six months of the bankruptcy case. *Id.* Associates therefore filed a motion for an administrative claim under Section 365(d)(10) for all post-petition lease payments, taxes, late fees and attorney fees, including money due during the first sixty days after the petition date. *Id.* With respect to the lease payments, the court held:

> Where, as in this case, an unexpired lease of personal property is ultimately rejected, the obligations coming due during the 60 days following the order for relief will be included in the lessor's claim for damages arising from the rejection of the lease. Those obligations do not represent an administrative claim.

*Id.* at 202. To reach this result, the court compared Section 365(d)(10), which Congress added to the Bankruptcy Code in 1994, with the older Section 365(d)(3) [4].

**4.** Section 365(d)(3) states:
The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwith- standing section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be

The older Section 365(d)(3) directs debtors in possession in Chapter 11 cases to timely perform all the debtor's obligations arising from unexpired nonresidential real property leases, but gives courts the discretion to extend the time for performance of obligations arising within sixty days after the date of the order for relief. The *Kyle* court concluded that inclusion of the automatic sixty day abeyance period in Section 365(d)(10) indicated Congress's intent to preclude all personal property lease obligations arising during that period from treatment as an administrative claim.

The facts and analysis in *Kyle* are distinguishable from the facts and issues presented in this proceeding. In *Kyle,* the lessor sought an administrative expense claim *exclusively* under Section 365(d)(10). There is no indication in the opinion that the lessor sought an administrative expense under Section 503(b)(1), particularly for the initial sixty day period after the petition date.[5] In this proceeding, the lessor, Xtra Lease, has filed a claim for administrative expenses under Section 503(b)(1). In addition, *Kyle* held only that Section 365(d)(10), *by itself,* does not allow lessors of personal property to apply for an administrative expense claim for lease payments due during the first sixty days of a Chapter 11 bankruptcy proceeding. The court did not address the issue raised here, namely, whether Section 365(d)(10) *precludes* Xtra Lease from applying for an administrative expense under Section 503(b)(1).

Section 365(d)(10), like its nonresidential real property counterpart, Section 365(d)(3), grants lessors the extraordinary benefit of an automatic administrative expense, without the usual proofs required under Section 503(b)(1)(A) to show actual, necessary costs of preserving the estate. *See In re Russell Cave Co.,* 247 B.R. 656, 659 (Bankr.E.D.Ky.2000)(discussing Section 365(d)(10)); *In re The Elder–Beerman Stores Corp.,* 201 B.R. 759, 763 (Bankr. S.D.Ohio 1996); *In re Brennick,* 178 B.R. 305, 307 (Bankr.D.Mass.1995)(discussing Section 365(d)(3)). Under Section 365(d)(10) that benefit is applicable only from and after the first 60 days, which strikes a balance between the debtor-in-possession's need for time to reject non-beneficial personal property leases without creating administrative claims against the estate, and the lessor's right to get paid for the leased goods. However, the language of Section 365(d)(10) does not do away with a claimant's right to apply for administrative expenses under Section 503(b)(1).

Section 365(d)(10) does not even speak to the first 59 days after the filing of a petition. Instead, it creates an "abeyance period" for creditors to apply for administrative expenses related to unexpired personal property leases up until the sixtieth day after the petition date, after which the Trustee is required to perform the debtor's obligations under the lease. *In re Elder–Beerman Stores Corp.,* 201 B.R. at 764. Senator Grassley's comments on the legislation, quoted above, provide additional support for this interpretation. According to the Senator, the purpose of inserting the word "first" into the statute was "to make it clear the intent that the provision does not affect payments originally due prior to 60 days before [sic] the order

---

deemed to affect the trustee's obligations under the provisions of subsection (b) of (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

5. The court does not even mention Section 503(b), except when it quotes Section 365(d)(10) (which refers to Section 503(b)).

of relief." 140 Cong. Rec. S14462 (Oct. 6, 1994). In addition, Section 365(d)(10) and (d)(3) are the *only* two sections in the Bankruptcy Code "requiring the estate to perform the debtor's obligations at all, much less in a timely manner." *In re Brennick,* 178 B.R. at 308. The reason for this legislative command is "the coercive nature of a lessor's extension of credit." *Id.* Additional legislative history supports *Brennick's* analysis. That history indicates Congress enacted Section 365(d)(10) to (1) shift the burden of bringing a motion to assume or reject the lease to the debtor while (2) giving debtors-in-possession sufficient breathing room after the petition date to "make an informed decision." 140 Cong. Rec. H10, 752–01 (daily ed. October 4, 1994). Nothing in either the statutory language or the legislative history indicates an intent to preclude lessors from filing administrative claims under Section 503(b)(1).

One case that addresses the issue of whether Section 365(d)(10) precludes an administrative claim under Section 503(b)(1) on facts similar to those here is *In re Raymond Cossette Trucking, Inc.,* 231 B.R. 80 (Bankr.D.N.D.1999). Like the Debtor in this proceeding, the debtor in *Raymond Cossette* also leased over-the-road refrigerated trailers. *Id.* The debtor used the trailers for seven months following the date it filed its Chapter 11 petition, until the case was converted to Chapter 7 and the trustee rejected the leased trailers. *Id.* at 82–83. The lessor then filed an administrative expense claim, exclusively under Section 503(b)(1), for the entire seven month period following the petition date. *Id.* at 83. Although the trustee did not contend Section 365(d)(10) precluded the lessor's administrative expense claim, he argued Section 365(g) provided the exclusive remedy for lessors when lessees fail to perform and unilaterally reject the lease. *Id.* The court found the result de-

pended on whether the debtor used and gained some benefit from the property post-petition. *Id.* If the debtor rejected the contract on the petition date and did not use the property to its benefit post-petition, then the lessor would only be entitled to an unsecured claim for damages. *Id., citing* 4, *Collier's on Bankruptcy,* ¶ 503.06 (rev. 15th ed.1998). If, instead, the debtor retained the property and obtained some benefit from it, "then section 503(b)(1)(A) comes into play irrespective of whether damages for breach might otherwise lie." *Id., citing In re Thompson,* 788 F.2d 560 (9th Cir.1986); *Kinnan & Kinnan P'ship v. Agristor Leasing,* 116 B.R. 162 (D.Neb.1990).

Other courts have also decided Section 365(d)(10) does not take away a personal property lessor's right to apply for administrative expenses during the first sixty days of a case. *See In re Magnolia Gas Co.,* 255 B.R. 900, 917 (W.D.Okl.2000); *In re Eastern Agri–Systems, Inc.,* 258 B.R. 352, 354–55 (Bankr.E.D.N.C.2000) (finding administrative expense claims arising under § 365(d)(10) are independent from administrative expense claims under § 503(b)); *In re Pan Am. Airways Corp.,* 245 B.R. 897, 899 (Bankr.S.D.Fla.2000) (holding that although the lessor was not entitled to an administrative expense claim under § 365(d)(10) for the debtor's use of leased property during the first sixty days of the case, the lessor would be entitled to those expenses under § 503(b)(1) to the extent the lessor could prove the expenses represented the "actual, necessary costs and expenses of preserving the estate."); *In re Russell Cave Co.,* 247 B.R. at 659 (finding lessors may apply for administrative expenses "relative to unexpired leases of personal property pursuant to § 503(b)(1) up until the 60th day after filing, after which the trustee is required

742

to perform the debtor's obligations under the lease.").

## C. *Application To This Proceeding*

■ Based on the foregoing analysis, the court will deny the Trustee's Motion for Partial Summary Judgment because the Trustee has not established he is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a), made applicable by Fed. R.Bankr.P. 7056. Section 365(d)(10) does not preclude Xtra Lease from applying under Section 503(b)(1) for administrative expenses that arose during the first fifty-nine days of the Debtor's Chapter 11 case. As a result, Xtra Lease will have the opportunity at trial to prove it is entitled to an administrative claim pursuant to Section 503(b)(1)(A) for personal property lease payments that became due during the 59 days after the Chapter 11 petition was filed. In addition, to the extent Furley's failed to perform its obligations under the Lease Agreement that became due after the 59 day period until the date the Lease Agreement was rejected, Xtra Lease will be entitled to an automatic administrative claim pursuant to Section 365(d)(10), unless the Trustee can convince the court to rule otherwise "based on the equities of the case." 11 U.S.C. § 365(d)(10).

Therefore, it is, this 12th day of June, 2001, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that Plaintiff's Motion for Partial Summary Judgment is **DENIED**.